BRYAN SCHWARTZ LAW
BRYAN SCHWARTZ (SBN 209903)
SAMUEL GOLDSMITH (SBN 320471)
180 Grand Avenue, Suite 1380
Oakland, California 94612
Tel. (510) 444-9300
Fax (510) 444-9301
Email: bryan@bryanschwartzlaw.com
       samuel@bryanschwartzlaw.com

Attorneys for Plaintiff Iram Bakhtiar
Individually and all others similarly situated

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRAM BAKHTIAR, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br>vs.<br><br>INFORMATION RESOURCES, INC.,<br><br>    Defendant. | Case No. 3:17-cv-04559-JST<br><br>**NOTICE OF MOTION AND UNOPPOSED RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>Initial Complaint Filed: August 9, 2017<br><br>Date: April 8, 2020<br>Time: 2:00 p.m.<br>Place: Oakland Courthouse, Courtroom 6, 2nd Floor |

## NOTICE OF MOTION AND MOTION

**TO THE COURT AND ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that a hearing will be held on this Unopposed Renewed Motion for Preliminary Approval of Class Action Settlement of Plaintiff Iram Bakhtiar ("Plaintiff") regarding her proposed settlement with Defendant Information Resources, Inc. ("Defendant," together with Plaintiff, the "Parties"). The hearing will be held on April 8, 2020, at 2:00 pm in the Courtroom of the Honorable Jon S. Tigar, located at Courtroom 6, 2nd Floor, 1301 Clay Street, Oakland, California 94612. At the hearing, the Parties will request that the Court: (a) preliminarily approve the Settlement; (b) certify the proposed class for settlement purposes only; (c) name Bryan Schwartz Law as Class Counsel, and Iram Bakhtiar as Class Representative; (d) name Rust Consulting as Claims Administrator; (e) approve the Class Notices to be sent to the Settlement Class, and (f) and schedule a final approval hearing date.

The Motion is based upon the Unopposed Renewed Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class and the Memorandum of Points and Authorities in support thereof; the Declaration of Bryan J. Schwartz, Esq., in support of the Motion and the exhibits attached thereto, including the Amended Settlement Agreement, Amended Settlement Agreement with redlines, the Proposed Notices to the Class, and the Proposed Notices to the Class with redlines; the Declaration of Janelle Sahouria, Esq., in support of the Motion; the Declaration of Christine Picciarello in support of the Motion; all other exhibits and attachments submitted in support of the Motion; any oral argument of counsel; the complete files, records, and pleadings in the above-captioned matter; and such additional matters as the Court may consider. A Proposed Order is submitted herewith.

Dated: March 16, 2020

                BRYAN SCHWARTZ LAW

                By: ____*/s/ Bryan J. Schwartz*____
                   BRYAN J. SCHWARTZ
                   SAMUEL GOLDSMITH

                *Attorneys for Plaintiff and the Putative Class*

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. THE AMENDMENTS TO THE SETTLEMENT AGREEMENT AND CLASS NOTICES COMPLY WITH THE ORDER AND THE GUIDELINES ....................... 1

III. THE PARTIES' REVISIONS SATISFY THE REMAINDER OF THE COURT'S CONCERNS AND COMPLY WITH THE GUIDELINES ........................................... 3

    A. Class Definition ................................................................................................ 3

    B. Class Members ................................................................................................. 4

    C. Released Claims ............................................................................................... 4

    D. Reversion .......................................................................................................... 5

    E. Damages Estimate ............................................................................................ 5

    F. Settlement Administrator Selection Process .................................................... 9

    G. Class Action Fairness Act ("CAFA") .............................................................. 9

    H. Reserve Fund .................................................................................................. 10

    I. California Workweeks Multiplier ................................................................... 10

    J. Separate Settlement Funds ............................................................................. 11

    K. Method of Distribution of Class Notice ......................................................... 11

IV. THE CLASS SATISFIES THE RULE 23 REQUIREMENTS FOR CLASS CERTIFICATION ....................................................................................................... 11

V. CONCLUSION ............................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Alexander v. FedEx Ground Pkg. Sys., Inc.*, 2016 WL 1427358 (N.D. Cal. 2016) ......................... 7

*Alakozai v. Chase Inv. Servs. Corp.*, 2014 WL 5660697 (C.D. Cal. 2014) ...................................... 8

*Benedict v. Hewlett-Packard Co.*, 314 F.R.D. 457 (N.D. Cal. 2016) ................................................ 8

*Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120 (9th Cir. 2002) ......................................................... 8

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) .......................................... 7

*Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544 (N.D. Cal. 2007) .................................................... 12

*Cruz v. Sky Chefs, Inc.*, 2014 WL 7247065 (N.D. Cal. 2014) .......................................................... 7

*Custom Led, LLC v. eBay, Inc.*, 2013 WL 4552789 (N.D. Cal. 2013) ........................................... 12

*Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492 (N.D. Cal. 2012) .............................................. 12

*Harris v. Super. Ct.*, 53 Cal.4th 170 (2011) ..................................................................................... 8

*Harris v. Vector Marketing*, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) ..................................... 6,7

*Harvey v. Morgan Stanley Smith Barney LLC*, 2019 WL 4462653 (N.D. Cal. 2019) ..................... 7

*In re Farmers Insurance Exchange*, 481 F.3d 1119 (9th Cir. 2007) ............................................... 7

*In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036 (N.D. Cal. 2008) ............................................. 7

*Ma v. Covidian Holding, Inc.*, 2014 WL 360196 (C.D. Cal. 2014) .............................................. 6,7

*McKeen Chaplin v. Provident Savings Bank*, 862 F.3d 847 (9th Cir. 2017) ................................... 8

*Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593 (E.D. Cal. 2015) ...................................... 11

*Nordstrom Comm'n Cases*, 186 Cal.App.4th 576 (2010) ................................................................ 7

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615 (9th Cir. 1982) ........... 5

*Ogbuehi v. Comcast of California/Colorado/Florida/Oregon, Inc.*, 303 F.R.D. 337 (E.D. Cal. 2014) ................................................................................................................................................ 7

*O'Sullivan v. AMN Servs., Inc.*, 2012 WL 2912061 (N.D. Cal. 2012) ......................................... 6,7

*Payala v. Wipro Techs., Inc.*, 2016 WL 6094158 (C.D. Cal. 2016) ................................................ 8

*Rodriguez v. West Publ.*, 563 F.3d 948 (9th Cir. 2009) .............................................................. 5,6,7

*Roes, 1-2 v. SFBSC Mgmt, LLC*, 944 F.3d 1035 (9th Cir. 2019) ................................................... 11

*Rosenburg v. IBM*, 2007 WL 2043855 (N.D. Cal. 2007) ................................................................ 9

*Vasquez v. USM Inc.*, 2016 WL 612906 (N.D. Cal. 2016) .............................................................. 7

*Viceral v. Mistras Grp. Inc.*, 2017 WL 66135 (N.D. Cal. 2017) ..................................................... 7

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ........................................................... 9

**Federal Regulations**

29 C.F.R. § 541.201 ..........................................................................................................................8

**Federal Rules**

28 U.S.C. § 1711, *et seq.*................................................................................................................9

29 U.S.C. § 201, *et seq.*..............................................................................................................11

**Labor Codes**

Cal. Lab. Code §§ 510.........................................................................................................10,11

Cal. Lab. Code §§ 1194......................................................................................................10,11

Industrial Wage Commission Wage Orders...............................................................10,11

**Procedural Guidelines**

Northern District of California's Procedural Guidelines for Class Action Settlements ......... *passim*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Pursuant to the Court's Order of January 30, 2020 ("Order"), Plaintiff submits a Renewed Motion for Preliminary Approval of Class Action Settlement, seeking approval of the amended settlement and settlement notices that reflect (the parties hope and believe) all of the changes implied from the Court's initial order denying approval without prejudice. This wage-and-hour class and collective action settlement – which the Court did not find unfair – still represents a $2.25 million common fund for 129 Client Service Managers, Client Solutions Managers, Client Service Analysts, Client Service Consultants, and other similar, non-management positions (collectively, "Client Service Managers"). The outcome provides substantial recovery in a risky misclassification case, as described in the original motion and below. The instant Renewed Motion tracks the Northern District of California's Procedural Guidelines for Class Action Settlements ("Guidelines"), unlike the original motion.

**II.    THE AMENDMENTS TO THE SETTLEMENT AGREEMENT AND CLASS NOTICES COMPLY WITH THE ORDER AND THE GUIDELINES.**

The Amended Settlement (Exhibit A to the Schwartz Declaration) incorporates the Court's feedback, most notably in the following respects:

| Original Settlement Agreement | Revised Settlement Agreement |
|---|---|
| Estimated number of individuals participating in Settlement | Attaches lists identifying all individuals covered by the Settlement Agreement, eliminating all doubt as to who is covered. Schwartz Decl. Ex. A ("Amended Settlement") at §2.33(a); Settlement Agreement Ex. 1-3. |
| Did not specify the populations of the Fair Labor Standards Act ("FLSA") Collective, California Class, and "Hybrid" action | Identifies all individuals belonging to each of the three Amended Settlement groups. Amended Settlement, Ex. 1-3; Declaration of Christine Picciarello ("Picciarello Decl.") at ¶¶ 3-6. |
| Called for possible reduction in total Settlement fund (described in the Order as "reversion") if five or more individuals were to exclude themselves from the Settlement | Removes reversion – settlement either proceeds or is void *ab initio* Amended Settlement § 7.3. |
| Was vague as to whether California Class Members would receive compounding | California Class Members' workweeks clearly receive the 1.75x multiplier just once. Provides |

| | |
|---|---|
| multiplier of 1.75 x 1.75 to calculate their allocations | separate 2.0x multiplier for "Hybrid" members. Amended Settlement § 4.7. |
| Did not define "gross" or "net" recovery to the Court's satisfaction | Defines both terms expressly and in greater detail. Amended Settlement at §§ 2.23(b); 2.33(b). |
| California Class Members released FLSA claims | California Class Members do not waive FLSA claims Amended Settlement §§ 2.1, 2.15. |
| Released claims that were not pled, *e.g.*, regarding taxation | Releases are tailored to claims pled. Amended Settlement §§ 2.1, 2.15. |
| Class Notice provided by mail only | Adds email and text message as additional methods to distribute Class Notice. Amended Settlement § 6.2. |
| Class definition varied from the definition in the First Amended Complaint, potentially causing confusion regarding who is covered | All individuals covered by the Amended Settlement expressly identified. Amended Settlement Ex. 1-3. |
| Purpose and mechanics for use of "Reserve Fund" of $100,000 was vaguely defined | Removes "Reserve Fund" provision entirely. |
| Did not describe what sort of documentation an individual may submit to the Settlement Administrator to contest the determination of that individual's workweeks | Describes documentation an individual may submit to contest the Settlement Administrator's workweeks calculation and gives examples. Amended Settlement § 6.7. |

The Parties also revised the Class Notices (Settlement Agreement Ex. A-C) in compliance with the Court's Order. The Parties:

- Drafted a third Class Notice for individuals who are members of the California Class but not the FLSA Collective (Settlement Agreement Ex. C);

- Modified the "Hybrid" Class Notice (for members of both the California Class and FLSA Collective) to clarify that it does not apply to members of the FLSA Collective who are not members of the California Class (Settlement Agreement Ex. B);

- Amended the class definitions;

- Explained why an individual's payment could increase from the estimated amount and eliminated language suggesting that an individual's allocation would be "at least" the amount listed on the notice;

- Clarified the amounts left to the Settlement Fund after deductions for attorneys' fees and costs, administrative costs, and the named Plaintiff enhancement;
- Used common language, including by defining or eliminating where appropriate Latin terms like *pro rata*;
- Described the types of documents an individual may submit to contest the Claims Administrator's determination of workweeks, and provided examples;
- Amended the Court's address;
- In the "Hybrid" Class Notice, provided the estimated FLSA Collective allocation and the estimated California Class allocation separately.
- Throughout the "Hybrid" Class Notice, clarified that the FLSA Collective claims and California Class claims are independent of each other and that an individual's participation in one does not preclude exclusion from the other.
- In the FLSA Collective Members' Notice, eliminated the word "POTENTIAL" from the phrase, "IMPORTANT NOTIFICATION TO POTENTIAL COLLECTIVE ACTION MEMBERS;" and
- Defined the terms, "FLSA Collective Action allocation," "gross allocation," and "California Class Action allocation."

The parties hope and believe the above-listed amendments should satisfy the Court's concerns expressed in the Order and comply with the Guidelines.

### III.  THE PARTIES' REVISIONS SATISFY THE REMAINDER OF THE COURT'S CONCERNS AND COMPLY WITH THE GUIDELINES.

A.  Class Definition

The Guidelines require an explanation of "any differences between the settlement class and the class proposed in the operative complaint and an explanation as to why the differences are appropriate in this case." Guidelines §§ 1(a), (b). The Order pointed to the temporal difference between the class periods described in the First Amended Complaint and those in the Settlement. The First Amended Complaint defined the periods for the California Class and FLSA Collective as extending through final disposition. The Court certified the FLSA Collective with this temporal

3

scope on July 26, 2018, allowing putative FLSA Collective Members to opt in within 60 days of the issuance of notice. The original Settlement described the scope of the FLSA Collective to individuals who opted in prior to March 6, 2019. Likewise, the original Settlement narrowed the temporal scope of the California class to end at May 30, 2019, rather than at final disposition.

To avoid confusion, the Parties agreed to individually list each individual who stands to benefit under the Settlement Agreement. *See* Picciarello Decl. at ¶¶ 3-6.

B. <u>Class Members</u>

The original Settlement anticipated the existence of 137 settlement class members, but allowed the possibility that others may be identified in the course of Settlement Administration. To eliminate any confusion as to the number and identities of California Class Members and FLSA Collective Members and Hybrid action members, the revised Settlement Agreement includes a list of each California Class Member, each FLSA Collective Member, and each Hybrid action member. Only these individuals are covered by the Amended Settlement. *See* Picciarello Decl. at ¶¶ 3-6.

The actual number of settlement class members totals 129 instead of 137 as originally anticipated. The number of settlement class members decreased as a result of Defendant's closer review of its employment records, which reflected that eight anticipated settlement class members did not actually possess applicable claims within the statutory period.

This amendment also addresses the Court's request to identify the number of members in each of the settlement classes separately from the total and any concern that someone would be covered by the settlement or release claims unknowingly.

C. <u>Released Claims</u>

Like the class definition, the Guidelines require an explanation as to the differences between the claims released and the claims brought in the operative complaint. Guidelines §§ 1(c), (d). The Amended Settlement Agreement addresses such differences by removing language that would have caused settlement class members to waive "all claims…relating to (i) the payment, taxation and allocation of the Class Counsel Award pursuant to this Settlement Agreement and (ii) the payment, taxation and allocation of Plaintiff's Service Award pursuant to this Settlement Agreement."

D. Reversion

Ninth Circuit law disfavors reversionary clauses. Guidelines § 1(h). As such, the Court scrutinized the "Reduction Clause," under which the total settlement fund would decrease *pro rata* if five or more individuals were to opt out. The Parties removed the offending language, previously found at Section 7.4. In the unlikely event that five or more settlement class members opt out, the Settlement Agreement provides IRI the right to void the Settlement Agreement entirely, with the Parties' rights restored *ab initio*. *See* Settlement Agreement § 7.3. As such, assuming Court approval, the only way that IRI avoids paying the full $2.25 million contemplated (plus employer's-side payroll taxes) is if the settlement fails altogether and the parties return to litigation, in the same positions as they stand today.

E. Damages Estimate

The Guidelines request movants seeking preliminary settlement approval provide the reviewing court with "the potential class recovery if plaintiffs had fully prevailed on each of their claims, and an explanation of factors bearing on the amount of the compromise." Guidelines § 1(e). The original Motion for Preliminary Approval briefed the estimated best-day outcome, but did not include an analysis of the estimated best-day recovery including highly uncertain recovery of penalties and liquidated damages, citing *Rodriguez v. West Publ.*, 563 F.3d 948, 965-966 (9th Cir. 2009) (treble damages too speculative to be required in damages analysis regarding settlement value). Under this framework, the original Motion argued that the best-day recovery would be approximately $8,386,503.59, or $6,820,156.71 if the Court were to use the fluctuating workweek method of calculating overtime damages. ECF No. 108 at 17. The Settlement amount is 26.83% and 32.99% of these amounts, respectively. *Id*. The Court requested an analysis of the best-day recovery including penalties and liquidated damages. *But see Rodriguez*, 563 .F.3d at 965-966 (rejecting 7th Circuit approach of estimating the range of possible outcomes, and putting "stock in the product of an arms-length, non-collusive, negotiated resolution….'Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice.'" (quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

Based on the same methods of calculation underlying estimated damages analysis described in the original Motion for Preliminary Approval and the Declaration of Bryan J. Schwartz, Esq., in support thereof, Plaintiff's Counsel determined that Class Members' theoretical unpaid wages, including missed meal and rest breaks and 100% of all possible statutory penalties and liquidated damages (not a typical result), total $8,684,583.35 for the California Class and $4,366,459.52 (including liquidated damages) for the FLSA Class, for a total of $13,051,042.87. The settlement fund, $2,250,000, equals 17.24 percent of this amount. This result compares favorably to (for example) *Rodriguez*, 563 F.3d at 965, in which the Ninth Circuit explained, rejecting settlement objections: "[T]he negotiated amount is fair and reasonable no matter how you slice it. There is no evidence of fraud, overreaching, or collusion. Even considering the trebling effect, the settlement amount represents *approximately ten percent* of the class's estimate of its own trebled damages…." (emphasis added); *see also, e.g.*, *O'Sullivan v. AMN Servs., Inc.*, 12-cv-2125 (ECF No. 92) (Spero, M.J.) (approving settlement of $3 million for a class of 11,685 people—total exposure estimated for the case was $108 million (*i.e.*, 2.78% of exposure recovered), *before* penalties and interest; average payment to claimants was $478.12), final approval order included as Ex. 7 to the Declaration of Bryan J. Schwartz in support of the original preliminary approval motion in this matter, in the *Bakhtiar* docket as ECF No. 108-8; *Harris v. Vector Marketing*, 2012 WL 381202, *2 (N.D. Cal. Feb. 6, 2012) (Chen, J.) (approving settlement of 15.7% of the total maximum verdict value, with $57 or $75/person net recovery); *Ma v. Covidian Holding, Inc.*, 2014 WL 360196, **4-5 (C.D. Cal. Jan. 31, 2014) ("9.1% of the total value of the action [was] 'within the range of reasonableness,'" despite recognizing that the plaintiff appeared "to have a fairly strong case"). Furthermore, Plaintiff's Counsel calculated the maximum, best-case scenario penalties under the California Labor Code Private Attorneys General Act ("PAGA") as $2,880,721.43. In addition to the risks of success on Plaintiff's PAGA claims, these claims did not significantly drive settlement negotiations. *See* Schwartz Decl. at ¶ 6. Including maximum PAGA damages, an unlikely outcome,[1] the class's best-day recovery totals $15,931,764.30. The $2,250,000 settlement fund

---

[1] After a trial against McDonald's, plaintiffs won just $700,270 in PAGA penalties, which their

represents approximately 14.22% of this amount—still adequate in light of the results in *Rodriguez*, *O'Sullivan*, *Harris*, *Ma*, and other cases. *See, e.g.*, *Harvey v. Morgan Stanley Smith Barney LLC*, 2019 WL 4462653, at *3 (N.D. Cal. Sept. 5, 2019) (Orrick, J.) (approving proposed settlement representing 6.6% of defendant's total exposure and noting favorably another settlement representing 5.75% of defendant's total exposure); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (Corley, M.J.) (approving settlement fund of $1 million representing 8.5% of the defendant's maximum total exposure); *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1042 (N.D. Cal. 2008) (Conti, J.) (noting in decision approving settlement amounting to just over 9% of the maximum potential recovery, "Plaintiffs here have agreed to accept a smaller certain award rather than seek the full recovery but risk getting nothing."); *Ogbuehi v. Comcast of California/Colorado/Florida/Oregon, Inc.*, Case No. 13:-cv-00672 (E.D. Cal. June 9, 2015) (ECF 30) (*see id.*, Schwartz Decl. Ex. H at ¶ 23 (preliminarily approving, for a settlement providing $100,000 gross to be distributed to the 88 class members, for a gross average payment of $1,136.26, constituting 10.5% of the maximum estimated value of the claims)); *id.*, 303 F.R.D. 337, 350 (E.D. Cal. 2014).

These estimates assumed complete victory for the class on every issue, which would require getting and keeping a class certified and disproving the administrative exemption's applicability in a new context, each of which was far from a certainty. In the original approval motion, Plaintiff raised *In re Farmers Insurance Exchange*, 481 F.3d 1119, 1132 (9th Cir. 2007) (reversing a $52.5 million plaintiffs' verdict, finding claims adjusters exempt), along with other examples showing the riskiness of misclassification litigation such as this. Examples abound of misclassification cases

---

expert valued at $41 million. *See* Schwartz Decl. Ex. I, *Sanchez v. McDonald's* Statement of Decision at 24-25; Schwartz Decl. Ex. J, (June 12, 2017, *Daily Journal* article concluded "McDonald's won" after PAGA trial). As noted previously, PAGA allocations can be zero where the class is receiving a meaningful percentage of the potential wage and reimbursement recovery, and injunctive relief. *See also Nordstrom Comm'n Cases*, 186 Cal.App.4th 576, 589 (Cal. App. 2010) (PAGA settlements must be considered in the context of "the overall settlement of the case" and need not allocate any portion of the recovery to PAGA penalties to warrant court approval). *See also, e.g.*, *Viceral v. Mistras Grp. Inc.*, 2017 WL 661352, at ** 1, 3 (N.D. Cal. Feb. 17, 2017) (Chen, J.) (approving PAGA penalties worth 0.33% of gross settlement and 0.15% of total estimated value of PAGA claims); *Alexander v. FedEx Ground Pkg. Sys., Inc.*, 2016 WL 1427358, at *2 (N.D. Cal. Apr. 12, 2016) (Chen, J.) (0.7% PAGA allocation); *Vazquez v. USM Inc.*, 2016 WL 612906, at *1 (N.D. Cal. Feb. 16, 2016) (Donato, J.) (0.67%); *Cruz v. Sky Chefs, Inc.*, 2014 WL 7247065, at *3 (N.D. Cal. Dec. 19, 2014) (Ryu, J.) (0.57%).

denied certification, for example, under the administrative exemption, based on employers' arguments that different class members would testify differently about how they performed their duties—*e.g.*, that depending on the accounts on which they worked and their levels of seniority, they had varying levels of supervision governing them, and different class members engaged to a greater or lesser degree in work directly related to management policies or general business operations of customers (versus routine day-to-day operations). *See, e.g.*, *Alakozai v. Chase Inv. Servs. Corp.*, 2014 WL 5660697, at **6-9 (C.D. Cal. Oct. 6, 2014) (denying class certification in administrative exemption, misclassification case for such reasons); *Benedict v. Hewlett-Packard Co.*, 314 F.R.D. 457, 477-78 (N.D. Cal. 2016) (Freeman, J.) (denying class certification where different class members had distinct duties that could lead to different outcomes with the administrative exemption defense); *Payala v. Wipro Techs., Inc.*, 2016 WL 6094158, at *12 (C.D. Cal. Aug. 23, 2016) (same, citing cases including *Benedict*).

Likewise, on the merits of the administrative exemption, 29 C.F.R. §541.201—the directly-related prong—Defendant argues that Client Service Managers do work related to the general business operations of IRI's clients, namely, under subsection (b), marketing and research. Though Plaintiff would rely upon the administrative-production dichotomy (as elaborated by the Ninth Circuit in *McKeen Chaplin v. Provident Savings Bank*, 862 F.3d 847 (9th Cir. 2017)), the dichotomy is often challenged in service industry employers contending that work does not fall "squarely on the 'production' side of the line" and that white-collar employee groups are "servicing" a business rather than performing its core operations. *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1126-1127 (9th Cir. 2002) (discussing 29 C.F.R. § 541.205(b) (2000) of the former Department of Labor regulations, which is incorporated into interpretation of California's wage orders—*see Harris v. Super. Ct.*, 53 Cal.4th 170 (Cal. 2011)).

On damages, the maximum best-day exposure calculus assume Plaintiffs would defeat the fluctuating workweek method for calculating damages (which has yet to be decided by the Ninth Circuit in the context of a misclassification case) and IRI's good-faith defense concerning a group of market research employees—where the administrative exemption has never been determined. Each of these carried substantial risk of reducing class recovery by millions of dollars. Moreover,

the total monetary recovery procured by the Amended Settlement does not reflect the full measure of relief obtained, given the impactful injunctive relief obtained and IRI's separate payment of payroll taxes. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002) ("Non-monetary benefits" to the Class, such as causing the defendant "to change its personnel classification practices," are "a relevant circumstance" in evaluating a class settlement); *Rosenburg v. IBM*, 2007 WL 2043855, at *3 (N.D. Cal. July 12, 2007) (noting employer's payment of employer's share of payroll taxes factors favorably). These issues were addressed at length in the original Motion for Preliminary Approval.

  F. <u>Settlement Administrator Selection Process</u>

The Guidelines require preliminary approval motions to "identify the proposed settlement administrator, the settlement administrator selection process, how many settlement administrators submitted proposals, what methods of notice and claims payment were proposed, and the lead class counsel's firms' history of engagement with the settlement administrator over the last two years. The parties should also address the anticipated administrative costs, the reasonableness of those costs in relation to the value of the settlement, and who will pay the costs." Guidelines § (2).

Plaintiff's Counsel requested bids from settlement administrators on June 5, 2019. Schwartz Decl. at ¶ 7. Three vendors responded and submitted bids, including Rust Consulting, whose bid was the most competitive. *Id*. Rust anticipated administration costs of $10,500.00—about $4,000.00 less than the next-most competitive bid—which are reasonable for a class about this large and geographically disperse, in Plaintiff's Counsel's experience. *Id*. The bids assumed that: class notice and distribution would be accomplished via U.S. mail, settlement class members were distributed throughout 10 states, settlement class member call support would be included, and there would be two distributions. Plaintiff's Counsel has used Rust Consulting to administer nine class action settlements within the past two years. *Id*.

  G. <u>Class Action Fairness Act ("CAFA")</u>.

According to the Guidelines, "[t]he parties should address whether CAFA notice and, if required, when it will be given." Guidelines § 10. IRI timely submitted CAFA notices as provided in the declaration of Janelle Sahouria, Esq., in support of this motion. *See* 28 U.S.C. § 1711 *et seq.*

      H.  <u>California Workweeks Multiplier</u>.

The original Settlement Agreement included a provision that California workweeks were to be multiplied by 1.75 in order to account for the greater value of the California claims at issue. As noted above, the Amended Settlement clarifies that the 1.75 multiplier is applied only once and not compounded. Settlement Agreement § 4.7.

The Court further inquired as to the reason a 1.75 multiplier was appropriate. A multiplier of this amount accounts for the substantial worth of California claims, which are far more valuable than FLSA-only claims. *See* Schwartz Decl. at ¶ 8. While FLSA claims include only overtime damages, the California claims also involved damages for missed meal and rest break premiums, failure to provide accurate itemized wage statements, failure to reimburse business expenses, and other state law causes of action. First Amended Complaint, ECF No. 13. Plaintiff's Counsel estimates that meal and rest break premiums by themselves could value $3,942,995.14 in best-day recovery, which alone nearly equals the estimated total best-case recovery of $4,366,459.52 in wages plus liquidated damages for the FLSA claims. Schwartz Decl. at ¶ 5. Furthermore, California law considers more hours per workweek as overtime than does the FLSA; in California, any hours worked beyond eight in a given day are considered overtime (Cal. Lab. Code §§510, 1194, and Industrial Wage Commission Wage Orders), unlike under the FLSA (29 U.S.C. § 201 *et seq*.). In this case, the best-day recovery for the California Class, including all claims and PAGA penalties, is estimated to be $8,684,583.35, about 1.98893 times greater than the $4,366,459.52 estimated best-day recovery for the FLSA Class. Schwartz Decl. at ¶ 5. These considerations support the use of a 1.75 multiplier for California workweeks and the 2.0 multiplier for "Hybrid" members, given that those individuals' workweeks count towards both FLSA claims and California claims.

      I.  <u>Separate Settlement Funds</u>.

The Court also asked why the Settlement Agreement creates just one settlement fund rather than separate funds for the separate settlement classes, contrary to *Millan v. Cascade Water Services, Inc.*, which notes that separate funds "would better protect absent class members." 310 F.R.D. 593, 602. The concerns in *Millan* are not present here. There, the Eastern District was concerned by a reversionary clause triggered if fewer than all absent class members decided to

participate in the settlement at issue. *Id*. at 612. To protect the FLSA collective from the reversion resulting from Rule 23 class member exclusions the Court ordered the settling parties to split the fund into separate funds. *Id*. at 612.

The Parties here have removed the clause that would have allowed reduction in the settlement fund based on Class Members opting out, as discussed above. Accordingly, this Settlement Agreement presents no *Millan* concern, and there is no basis upon which to conclude that separate funds are necessary to protect settlement class members.

J. <u>Method of Distribution of Class Notice</u>.

The original Settlement Agreement provided Class Notice to be distributed by U.S. mail only. The Amended Settlement provides for Class Notice to be distributed by email and, for those settlement class members with cell phone numbers tracked in the HR system, by text message. *See Roes, 1-2 v. SFBSC Mgmt, LLC*, 944 F.3d 1035, 1046-47 (9th Cir. 2019).

K. <u>Website</u>.

The Court stated that the settlement website should be operational when this Motion is submitted. The website is currently operational and may be accessed at http://www.bryanschwartzlaw.com/irisettlement.

**IV. THE CLASS SATISFIES THE RULE 23 REQUIREMENTS FOR CLASS CERTIFICATION.**

The Court ruled that Plaintiff has not yet shown that the California Class qualifies for conditional certification under Rule 23. The California Class satisfies the requirements of Rule 23 for conditional certification. There are 77 California Class Members throughout the state, sufficient to establish numerosity. *See Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007) ("[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members…."). In addition, Plaintiff is typical of the Class Members and an adequate representative of the Class; Plaintiff served as a Client Service Manager in California during the class period, has no conflicts with the Class, and is represented by experienced Class Counsel. Furthermore, there are common questions of law and fact that predominate, such as whether California-based Client Service Managers worked more than 40 hours per week or eight hours per day and were improperly

classified as exempt from California wage and hour law based upon the administrative exemption, among other factual and legal issues under California state law. *See Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 506 (N.D. Cal. 2012) (discussing Rule 23 elements); *see also* First Amended Complaint (ECF No. 13) at ¶¶ 40-46 (enumerating several legal and factual questions common to California Class Members). A class action is the superior means of resolution because it would achieve the resolution of the putative class members' claims at a lower cost and would reduce the likelihood of inconsistent determinations. *See, e.g.*, *Custom Led, LLC v. eBay, Inc.*, 2013 WL 4552789 (N.D. Cal. Aug. 27, 2013) (Tigar, J.) (superiority established for these reasons).

## V.   CONCLUSION.

The Amended Settlement Agreement and supporting materials comply with the Order and the Guidelines. Under the applicable class and collective action standards, Plaintiff requests that the Court: (a) preliminarily approve the Settlement; (b) certify the proposed classes, for settlement purposes only; (c) name Bryan Schwartz Law as Class Counsel, and Iram Bakhtiar as Class Representative; (d) name Rust Consulting, Inc. as Claims Administrator; (e) approve the Class Notices to be sent to the Settlement Class, and (f) and schedule a final approval hearing.

Dated: March 16, 2020                         /s/ *Bryan J. Schwartz*
                                              Bryan J. Schwartz
                                              Samuel Goldsmith
                                              BRYAN SCHWARTZ LAW