UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRAM BAKHTIAR,<br><br>      Plaintiff,<br><br>   v.<br><br>INFORMATION RESOURCES, INC.,<br><br>      Defendant. | Case No. 17-cv-04559-JST<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF AMENDED CLASS ACTION SETTLEMENT AND REQUIRING REVISIONS TO PROPOSED NOTICES**<br><br>Re: ECF Nos. 121 |

Before the Court is Plaintiff Iram Bakhtiar's renewed motion for preliminary approval of an amended class action settlement and preliminary certification of a settlement class.  ECF No. 121.  The Court will grant the motion but will require Bakhtiar to revise and re-file the proposed notices before the Court authorizes their dissemination to the members of the settlement classes.

## I.      BACKGROUND

### A.      The parties and claims

This wage-and-hour action arises out of the alleged misclassification by Defendant Information Resources, Inc. ("IRI") of certain of its employees as exempt from federal and state overtime laws.

IRI is a market research company that offers business intelligence and analysis.  Plaintiff Bakhtiar alleges that IRI employees in certain non-management positions (collectively, "Client Service Managers") were misclassified by IRI as exempt.  Bakhtiar alleges that Client Service Managers are, in fact, non-exempt employees, because they perform basic client service and clerical tasks, namely "tasks without significant discretion, independence, or technical training or knowledge," ECF No. 108 at 11, and do not manage client accounts or advise clients concerning

United States District Court
Northern District of California

United States District Court
Northern District of California

business strategy.  Bakhtiar alleges that, as a result of this alleged misclassification, IRI improperly denied Client Service Managers overtime wages, meal and rest periods, reimbursement of business expenses, and accurate itemized wage statements.

In the operative complaint, ECF No. 13, Bakhtiar asserts eight claims against IRI: (1) failure to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207; (2) failure to pay overtime wages in violation of California Labor Code §§ 510 and 1194; (3) failure to provide meal and rest periods in violation of California Labor Code §§ 226.7 and 512; (4) failure to provide accurate itemized wage statements in violation of California Labor Code § 226; (5) failure to pay wages upon discharge in violation of, and waiting penalties under, California Labor Code §§ 201-204; (6) failure to reimburse business expenses in violation of California Labor Code § 2802; (7) violations of the Unfair Competition Law ("UCL"), California Business and Professions Code § 17200; and (8) a claim for civil penalties under the Private Attorney General Act of 2004 ("PAGA"), California Labor Code § 2698.

Bakhtiar asserts these claims on her own behalf and on behalf of proposed classes under Rule 23 and a collective action under the FLSA.

> **Proposed California Class**: All persons who are or have been employed by IRI as Client Service Managers including Client Solutions Managers, Client Service Consultants, Client Service Analysts, and other similar, non-management positions, within the State of California at any time from four years prior to the filing of the initial Complaint through the final disposition of this case.
>
> **Proposed California Penalties Subclass**: All California Class Members who are or have been employed by IRI at any time within the year prior to the filing of the initial Complaint through the final disposition of this case.
>
> **Proposed California Waiting Time Penalties Subclass**: All California Class Members who no longer work for IRI and have not worked for IRI for more than 72 hours within three years prior to the filing of the initial Complaint through the final disposition of this case.
>
> **Collective Class**: All persons who are or have been employed by IRI as Client Service Managers including Client Solutions Managers, Client Service Consultants, Client Service Analysts, and other similar, non-management positions, within the United States at any time from three years prior to the filing of the initial Complaint through the final disposition of this case.

2

### B.   Procedural history

Bakhtiar filed the first iteration of the complaint on August 9, 2017, ECF No. 1, and filed the operative complaint on October 13, 2017, ECF No. 13.  Prior to filing the operative complaint, on August 9, 2017, Bakhtiar provided notice to the Labor and Workforce Development Agency ("LWDA") regarding her intention to commence an action under PAGA.  ECF No. 13-2 at 2.  IRI filed an answer to the operative complaint on October 27, 2017.  ECF No. 16.  On February 22, 2018, the Court denied IRI's motion to transfer this action to the Northern District of Illinois. ECF No. 38.

On July 26, 2018, the Court granted in part and denied in part Bakhtiar's motion for conditional certification under the FLSA.  ECF No. 61.  The Court granted conditional certification of the Collective Class described above.  *Id.*  The Court also approved Bakhtiar's proposed notice to the Collective Class, with a few modifications.  *Id.*  Other than the Collective Class, none of the classes described in the operative complaint have been certified.

After conducting discovery, Bakhtiar and ISI engaged in two mediation sessions before entering into a settlement agreement.  ECF No. 108-1 at 2-3.

On January 30, 2020, the Court denied without prejudice Bakhtiar's motion for preliminary approval of a class action settlement and preliminary certification of a settlement class on the grounds that the motion and supporting materials did not contain the information required for evaluating whether the settlement agreement fell within the range of possible approval or whether any settlement class could be certified under Rule 23.  *See* ECF No. 119 at 12-24.  The Court also identified a number of deficiencies, including that the settlement classes were insufficiently defined, the plan of allocation appeared to unjustifiably overcompensate certain settlement class members, the proposed notices contained errors and omissions, the releases were overbroad, and the settlement agreement included a reversion clause and an unexplained "reserve fund."  *Id.*

The parties amended the settlement agreement and the proposed notices to address the issues and deficiencies identified by the Court in its order of January 30, 2020.

On March 16, 2020, Bakhtiar filed the present renewed motion for an order preliminarily

United States District Court
Northern District of California

approving the amended settlement agreement and preliminarily certifying a settlement class.  ECF No. 121.

###### C.      Amended settlement agreement[1]

The amended settlement agreement, ECF No. 121-2, requires ISI to pay a Total Settlement Amount of $2,250,000.  Out of this amount, the following amounts will be deducted before the Net Distribution Fund will be distributed to the members of the settlement classes who do not opt out or withdraw their FLSA consent: up to $15,000 for a service award to Bakhtiar; up to $562,500 in attorneys' fees (25% of the Total Settlement Amount); up to $25,000 in costs; up to $15,000 in costs of settlement administration; $16,875 for the LWDA's portion of the PAGA Payment; and all employee-side payroll and employment taxes and tax expenses.[2]  ECF No. 121-2 ¶¶ 2.27, 2.6, 2.36.  The Net Distribution Fund is estimated to be $1,615,625.  *Id.*  The Total Settlement Amount does not include employer-side payroll and employment taxes for wage payments under the amended settlement agreement, which ISI agrees to pay separately.  *Id.* ¶ 2.36.

The persons eligible to receive distributions from the Net Distribution Fund are grouped into three settlement classes.  Each settlement class has its own release clause and its own procedures for deeming a settlement class member either eligible to receive a distribution as a member of the settlement class or excluded from the settlement class, as described in more detail below.  The settlement classes are defined as follows:

> "California Class Members" means all individuals employed by Defendant within the state of California at any time from August 9, 2013, through May 30, 2019, and who have been employed by Defendant as Client Service Managers, Client Solutions Managers, Client Service Analysts, Client Service Consultants, and other similar, non-management positions, including Client Insights Analysts, and Client Insights Consultants.  The California Class Members did not opt into the FLSA as collective action members and are not releasing FLSA Collective Claims.  The California Class

---

[1] Bakhtiar filed a redline showing the changes that the parties made to the original settlement agreement.  *See* ECF No. 121-3.

[2] Under the amended settlement agreement, "PAGA Payment" means a total payment of $22,500, or 1% of the Total Settlement Fund, to settle all claims under PAGA.  From this amount, 75%, or $16,875, will be paid to the LWDA and 25%, or $5,625, will be distributed to members of the California settlement class.  ECF No. 121-2 ¶ 2.28.

United States District Court
Northern District of California

4

Members are only releasing their California Claims as a result of
this settlement.  The total number of California Class Members is 77
individuals.

*Id.* ¶ 2.2 ("California settlement class").

"FLSA Collective Members" means all individuals who were
employed by Defendant within the United States but outside of
California as Client Service Managers, Client Solutions Managers,
Client Service Analysts, Client Service Consultants, and other
similar, non-management positions, including Client Insights
Analysts, and Client Insights Consultants and who opted into this
matter prior to March 6, 2019, the date of the second mediation in
this case.  The FLSA Collective Members are only releasing FLSA
Collective Claims. . . . The total number of FLSA Collective
Members is 46 individuals.

*Id.* ¶ 2.16 ("FLSA settlement class").

"Hybrid Settlement Members" means all individuals who are both
California Class Members and FLSA Collective Members.  The
Hybrid Settlement Members are releasing California Class Claims
for the period they were employed in California and are also
releasing FLSA Collective Claims.  The total number of Hybrid
Members is 6 individuals.

*Id.* ¶ 2.19 ("hybrid settlement class").

Out of the 129 members of the three settlement classes, which are identified in Exhibits 1

through 3 to the amended settlement agreement, ECF No. 121-2, only persons who do not opt out

will be eligible to receive payments as members of the California settlement class; only persons

who do not withdraw their consent to join under the FLSA during the settlement notice period

will be eligible to receive payments as members of the FLSA settlement class; and only persons

who do not withdraw their FLSA consent to join and do not opt out during the settlement notice

period will be eligible to receive payments as members of the hybrid settlement class.  *Id.* ¶¶ 2.3,

2.17, 2.19, 2.23.

The amended settlement agreement describes a plan for distributing the Net Distribution

Fund to eligible members of the settlement classes as one that will allocate funds based on "a

proportional, workweek basis, with a multiplier of 1.75x applied to workweeks of the California

Settlement Class Members to account for the additional causes of action and remedies available to

and released by wage claimants in California, and a multiplier of 2.0x applied to workweeks of

the Hybrid Settlement Members who have both California claims and opted-into the FLSA collective action." *Id.* ¶ 4.6.

Bakhtiar's counsel estimates that "Class Members' theoretical unpaid wages, including missed meal and rest breaks and liquidated damages, total $8,684,583.35 for the California Class and $4,366,459.52 for the FLSA Class, for a total of $13,051,042.87." ECF No. 121-1 ¶¶ 5-6. The total possible recovery for the settlement classes increases to $15,931,764.30 if maximum PAGA penalties, which total $2,880,721.43, are taken into account. *Id.* The Total Settlement Amount of $2,250,000, therefore, equals 14.12% of the total possible recovery. *Id.*

If any checks remain uncashed or amounts remain undistributed totaling less than $10,000, then the settlement administrator will pay such funds to the UC Hastings College of the Law Workers' Rights Clinic. ECF No. 121-2 ¶ 10.3. Counsel for Bakhtiar represent that this organization is an appropriate *cy pres* recipient because it provides legal services for low-wage workers in California in wage-and-hour cases. ECF No. 108-1 at 14. Any undistributed amounts in excess of $10,000 will be redistributed to the settlement class members *pro rata*. ECF No. 121-2 ¶ 10.4.

The amended settlement agreement contains a "blow" provision that allows ISI to void the agreement if more than 10% of the California settlement class members and hybrid settlement class members opt out, or more than five FLSA settlement class members who have not previously released their claims request to withdraw their consent to join during the settlement notice period. *Id.* ¶ 7.3.

The claims that the members of each of the settlement classes will release if they do not opt out or withdraw their FLSA consent, respectively, are the following:

> "California Class Claims" means all claims for wages, reimbursements and related penalties actually alleged or that could have been alleged in the Action by Plaintiff, on behalf of herself and the California Class Members, that arise out of the allegations alleged in the operative First Amended Complaint, including but not limited to: (1) Failure to Pay All Wages; (2) Failure to Pay Overtime under Cal. Labor Code §§ 510, 1194, and IWC Wage Orders; (3) Failure to Provide and/or Authorize Meal and Rest Periods under Cal. Labor Code §§ 226.7, 512, and IWC Wage Orders; (4) Failure to Provide Accurate Itemized Wage Statements under Cal. Labor Code § 226; (5) Failure to Pay Earned

United States District Court
Northern District of California

Wages Upon Discharge, Waiting Time Penalties under Cal. Labor Code §§ 201-204; (6) Failure to Reimburse Business Expenses under Cal. Labor Code § 2802; and (7) Unlawful and/or Unfair Business Practices in Violation of Cal. Business & Professions Code § 17200, et seq.; (8) penalties pursuant to the Private Attorneys General Act ("PAGA"), Cal. Labor Code § 2699, et seq.; and (9) attorneys' fees and costs of litigation associated with this Action.  The California Class Claims do not encompass the FLSA Collective Claims and do not release any claims under the FLSA. . . .

"FLSA Collective Claims" means all federal claims for wages, benefits and related penalties actually alleged or that could have been alleged in the Action by Plaintiff, on behalf of herself and the FLSA Collective Members, based on the facts alleged in the operative First Amended Complaint, (1) namely, failure to pay all minimum and overtime wages due under the Fair Labor Standards Act (29 U.S.C. §201, et seq.) and (2) attorneys' fees and costs of litigation incurred to litigate and resolve this Action.  The FLSA Collective Claims do not encompass the California Class Claims, and the California Class Claims do not encompass the FLSA Collective Claims. . . .

"Hybrid Settlement Members' Released Claims" means the (1) California Class Claims that the Hybrid Members are fully and irrevocably releasing in exchange for the consideration provided by this Settlement Agreement, whether arising at law, in contract or in equity, and whether for economic or non-economic damages, restitution, injunctive relief, penalties or liquidated damages from August 9, 2013, through May 30, 2019, and (2) the FLSA Collective Claims that the FLSA Settlement Collective Members are fully and irrevocably releasing in exchange for the consideration provided by this Settlement Agreement from three years before each FLSA Collective Members Opt-In Date through the date of the Preliminary Approval Order.

*Id.* ¶¶ 2.1, 2.15, 2.21.

As part of the amended settlement agreement, IRI agreed to reevaluate the job responsibilities of persons who hold certain positions and to, among other things, provide status reports to class counsel for two years after the entry of final judgment with respect to its re-classification of these employees, if any.  *Id.* ¶ 4.15.

Within 10 days of preliminary approval, ISI will provide to the settlement administrator the last-known mailing address and other known contact information of the members of the settlement classes, and within 20 days of preliminary approval, the settlement administrator will send a notice specifically tailored to each settlement class by first-class mail, as well as by email and text message to those for whom email and cell phone numbers are available in ISI's human

7

resources database.  *Id.* ¶¶ 6.1, 6.2, 6.9.  Bakhtiar's counsel also will maintain a website with links to relevant case and settlement documents, and a telephone number, email address, and post office box to receive communications from members of the settlement classes.  *Id.* ¶ 6.13.

Within 45 days from the date the notice is mailed, members of the California settlement class may object or opt-out, and members of the FLSA settlement class may withdraw their consent.  *Id.* ¶¶ 2.12, 7.1, 8.2.  Payments will be mailed to the addresses of eligible settlement class members; eligible settlement class members are not required to submit a claim form.  *Id.* ¶¶ 10.2, 10.3.

Members of the settlement classes may dispute the dates of their employment, location, or total workweeks by providing notice to the settlement administrator before the date for opting out or objecting to the amended settlement agreement, and they will have the burden to demonstrate through employment documentation described in paragraph 6.8 of the amended settlement agreement that the settlement administrator's calculations are incorrect.  *Id.* ¶ 6.8.

### D.       Jurisdiction

The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367.

## II.      LEGAL STANDARD

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Rule 23 requires courts to employ a two-step process in evaluating a class action settlement.  First, the parties must show "that the court will likely be able to . . . (i) approve the proposal under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(1)(B).  In other words, a court must make a preliminary determination that the settlement "is fair, reasonable, and adequate" when considering the factors set out in Rule 23(e)(2).  Fed. R. Civ. P. 23(e)(2).  The court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (citation omitted); *see also* Manual for Complex Litigation, Fourth § 21.632 (FJC 2004) (explaining that courts "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the

final fairness hearing").  "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge."  *City of Seattle*, 955 F.2d at 1276 (citation omitted).  Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

      If no class has yet been certified, a court must likewise make a preliminary finding that it "will likely be able to . . . (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  If the court makes these preliminary findings, it "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  *Id.*  Second, courts must hold a hearing pursuant to Rule 23(e)(2) to make a final determination of whether the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

      Within this framework, preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  *In re Tableware*, 484 F. Supp. 2d at 1079 (citation omitted).  The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").  To assess a settlement proposal, courts must balance a number of factors:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

United States District Court
Northern District of California

*Id.* at 1026 (citations omitted).[3]  The proposed settlement must be "taken as a whole, rather than the individual component parts," in the examination for overall fairness.  *Id.*  Courts do not have the ability to "delete, modify, or substitute certain provisions"; the settlement "must stand or fall in its entirety."  *Id.* (citation omitted).

## III.    DISCUSSION

Bakhtiar moves (1) for preliminary approval of the amended settlement agreement; (2) for preliminary certification of the California settlement class; (3) for appointment of Brian Schwartz Law as counsel for the settlement classes and Bakhtiar as class representative; (4) for appointment of Rust Consulting as settlement administrator; (5) for approval of the proposed notices; and (6) for the scheduling of the final fairness hearing.

As discussed in more detail below, Bakhtiar has shown that the amended settlement agreement satisfies the requirements for preliminary approval and that the California settlement class can be preliminarily certified for settlement purposes.  However, the proposed notices continue to contain errors that must be corrected before the Court authorizes their dissemination to the settlement class members.

### A.    Fairness, adequacy, and reasonableness

For the reasons discussed below, the Court finds that the amended settlement agreement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  *In re Tableware*, 484 F. Supp. 2d at 1079.

#### 1.    No signs of collusion

Because the amended settlement agreement was reached prior to class certification, "there

---

[3] These factors are substantially similar to those articulated in the 2018 amendments to Rule 23(e), which were not intended "to displace any factor [developed under existing Circuit precedent], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018) (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment).

United States District Court
Northern District of California

is an even greater potential for a breach of fiduciary duty owed the class during settlement," and accordingly, it must withstand "an even higher level of scrutiny for evidence of collusion or other conflicts of interest[.]"  *In re Bluetooth*, 654 F.3d at 946.  Signs of collusion include: (1) a disproportionate distribution of the settlement fund to counsel; (2) negotiation of a "clear sailing" provision; and (3) an arrangement for funds not awarded to revert to defendant rather than to be added to the settlement fund.  *Id.* at 947.  If "multiple indicia of possible implicit collusion" are present, a district court has a "special 'obligat[ion] to assure itself that the fees awarded in the agreement were not unreasonably high[.]'"  *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)) (alteration in the original).

As to the first *Bluetooth* factor, the Ninth Circuit has set a "benchmark" fee award of 25% of the recovery obtained for common fund settlements such as this one.  *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  Here, counsel for Bakhtiar intend to seek no more than that percentage.  The Court therefore finds that this factor does not indicate the presence of collusion as set forth in *Bluetooth*.

As to the second factor, the settlement does contain a clear sailing provision.  *See* ECF No. 121-2 ¶ 4.43 ("IRI agrees not to oppose a request for the Class Counsel Award").  When a settlement contains a clear sailing provision, "the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefits to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested."  *In re Bluetooth*, 654 F.3d at 948 (citation omitted).  However, a "'clear sailing' provision 'does not signal the possibility of collusion' where, as here, Class Counsel's fee will be awarded by the Court from the same common fund as the recovery to the class."  *In re High-Tech Emp. Antitrust Litig.*, No. 11-cv-02509-LHK, 2015 WL 5158730, at *14 (N.D. Cal. Sept. 2, 2015) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 961 n.5 (9th Cir. 2009)).

As to the third factor, the amended settlement agreement does not contain a reversionary provision.  Although the amended settlement agreement allows ISI to void the agreement in the event that more than 10% of the California settlement class members and hybrid settlement class members opt out, or more than five FLSA settlement class members who have not previously

11

1    released their claims request to withdraw their consent to join during the settlement notice period,

2    this termination option is not a reversionary provision and does not suggest the existence of

3    collusion or that the amended settlement agreement is not fair or reasonable.  *See In re Online*

4    *DVD-Rental Antitrust Litig*., 779 F.3d 934, 948 (9th Cir. 2015).

5        In light of the foregoing, the Court finds no signs of collusion.

6                    **2.      No obvious deficiencies**

7        In its order of January 30, 2020, the Court identified a number of deficiencies that

8    precluded the Court from determining that the settlement fell within the range of possible

9    approval.  *See* ECF No. 119 at 12-24.  These deficiencies included that the settlement classes were

10   insufficiently defined, the plan of allocation appeared to unjustifiably overcompensate certain

11   settlement class members, the proposed notices contained errors and omissions, the releases were

12   overbroad, and that the settlement agreement included a reversion clause and an unexplained

13   "reserve fund."  *Id.*

14       These deficiencies, except for the errors in the proposed notices, which the Court discusses

15   in more detail below, have been cured, and the Court has found no further deficiencies in the

16   amended settlement agreement.

17                   **3.      No preferential treatment**

18       Under this factor, the Court looks at whether the settlement agreement provides

19   preferential treatment to any class member.  The Court concludes that the amended settlement

20   agreement does not grant preferential treatment to any settlement class member and that this factor

21   therefore weighs in favor of granting preliminary approval.

22       Under the amended settlement agreement, a multiplier of 1.75 will be applied to the

23   workweeks of California settlement class members, and a multiplier of 2 will be applied to the

24   workweeks of hybrid settlement class members before members of the settlement classes receive a

25   *pro rata* payment from the Net Distribution Fund based on the number of workweeks they worked

26   for ISI during the relevant time period.  ECF No. 121-2 ¶ 4.7.  Under this plan of allocation,

27   California and hybrid settlement class members will receive larger payments per workweek

28   relative to members of the FLSA settlement class.  Counsel for Bakhtiar justify these larger

United States District Court
Northern District of California

payments on the ground that the asserted claims under California law have a greater value than the FLSA claims, because the FLSA claims are limited to the recovery of overtime damages, whereas the California claims are not so limited, as they also permit the recovery of damages for missed meal and break periods, failure to provide accurate itemized wage statements, failure to reimburse business expenses.  ECF No. 121 at 15.  Further, California law permits for greater recovery of overtime wages than the FLSA.  *Id.*  Given the foregoing, counsel for Bakhtiar estimate that the best-day recovery for the California settlement class, including all claims and PAGA penalties, is estimated to be $8,684,583.35, roughly twice as much as the $4,366,459.52 estimated best-day recovery for the FLSA settlement class.  ECF No. 121 at 15; ECF No. 121-1 ¶¶ 5-8.  The Court is persuaded that the plan of allocation under the amended settlement agreement, which distributes settlement funds based on the relative amount of damages that each settlement class could recover, is fair and reasonable to all settlement class members.  *See In re Vitamins Antitrust Litig.*, No. 99-197 TFH, 2000 WL 1737867, at *6 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this one, that apportions funds according to the relative amount of damages suffered by class members have repeatedly been deemed fair and reasonable.").

In its order of January 30, 2020, the Court requested an explanation in any renewed motion for preliminary approval as to why separate funds were not created for each settlement class.  In the present motion, Bakhtiar explains that separate funds are sometimes required by courts where the settlement contains a reversionary clause that would have the effect of reducing, unjustifiably, the recovery of certain settlement class members.  *See* ECF No. 121 at 15-16.  In such circumstances, the separate funds are created to protect settlement class members whose recovery should not be reduced by the reversion of settlement funds to the defendant.  *Id.*; *see also Millan v. Cascade Water Services, Inc.*, 310 F.R.D. 593, 602 (E.D. Cal. 2015) (noting that it would be contrary to the FLSA's objectives to permit the defendant to retain funds pursuant to a reversionary clause that were intended for FLSA collective members and that the "creation of separate settlement funds for the FLSA class and the Rule 23 class" would protect FLSA collective members from the effects of the settlement's reversionary clause).  Here, the Court

United States District Court
Northern District of California

concludes that separate funds are unnecessary because the amended settlement agreement does not contain any reversionary clause.

Bakhtiar intends to seek an award of $15,000 for her contributions to the case.  The Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not necessarily render a settlement unfair or unreasonable.  *See, e.g.*, *Rodriguez*, 563 F.3d at 958-69.  The Court notes, however, that the presumptively reasonable amount is $5,000 per plaintiff.  *See Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016) (citation omitted).  The Court will determine the appropriate amount for Bakhtiar's service award at the final fairness hearing, at which time Bakhtiar will be required to justify the amount of the proposed award.

### 4.      The amended settlement agreement is within the range of possible approval

To determine whether a settlement agreement falls within the range of possible approval, courts evaluate and balance certain factors, including: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; and the presence of a governmental participant.  *Hanlon*, 150 F.3d at 1026.  All of these factors weigh in favor of granting preliminary approval here.

### a.      The strength of the plaintiff's case and the risk of continued litigation

The risk, expense, complexity, and likely duration of further litigation weigh in favor of granting preliminary approval.  Although Bakhtiar's counsel represents that the claims in this action are strong, counsel identify several significant obstacles in obtaining and maintaining certification under Rule 23 and surviving summary judgment based on administrative exemptions that ISI has raised as defenses.  *See* ECF No. 121 at 12-13; ECF No. 108 at 14-17; *see also Benedict v. Hewlett-Packard Co.*, 314 F.R.D. 457, 476 (N.D. Cal. 2016) (denying motion to certify classes in misclassification action on the ground that plaintiffs cannot show predominance

in light of administrative exemptions raised by defendants, the applicability of which requires an individualized factual inquiry regarding each employee's duties and discretion to perform duties). Accordingly, continued litigation carries significant risk and could result in no recovery for the settlement classes.  Moreover, further litigation would require investing additional time and resources on discovery, class certification, dispositive and discovery motions, trial, and appeals. Accordingly, obtaining significant and immediate recovery for the settlement classes is superior to taking the risk of recovering less or nothing by continuing to litigate.

### b.  The amount offered in settlement

To evaluate the adequacy of the settlement amount, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *In re Tableware*, 484 F. Supp. 2d at 1080.

As discussed above, Bakhtiar's counsel estimates that "Class Members' theoretical unpaid wages, including missed meal and rest breaks and liquidated damages, total $8,684,583.35 for the California Class and $4,366,459.52 for the FLSA Class, for a total of $13,051,042.87."  ECF No. 121-1 ¶¶ 5-6.  The total possible recovery for the settlement classes increases to $15,931,764.30 if maximum PAGA penalties, which total $2,880,721.43, are taken into account.  *Id.*  The Total Settlement Amount of $2,250,000 therefore equals 14.12% of the total possible recovery, which is a fair and reasonable percentage.  *Id.*; *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982) ("[I]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.").  Further, the amended settlement agreement also provides the settlement class members with non-monetary relief, because it requires ISI to reevaluate the job responsibilities of persons who hold certain positions and to, among other things, provide status reports to class counsel for two years after the entry of final judgment with respect to its re-classification of these employees, if any.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002) (noting that non-monetary benefits, such as requiring the defendant "to change its personnel classification practices," are relevant to evaluating a class settlement).

United States District Court
Northern District of California

15

Accordingly, the Court finds that the settlement class members' expected recovery under the amended settlement agreement is fair and reasonable, and that this factor weighs in favor of granting preliminary approval.

### c. The extent of discovery completed and the stage of the proceedings

The parties conducted significant discovery prior to settlement.  The parties exchanged over 70,000 pages of documents and conducted several depositions.  ECF No. 108 at 10; ECF No. 108-1 ¶ 5.  Additionally, as discussed above, the parties engaged in some motion practice, including litigating a motion to transfer and a motion for conditional certification of an FLSA collective action.

Accordingly, the parties had sufficient information about the strengths and weaknesses of their positions prior to negotiating and entering into the amended settlement agreement, which weighs in favor of granting preliminary approval.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (factor weighed in favor of approving settlement where plaintiffs had conducted significant discovery and consulted with damages and accounting experts).

### d. The experience and views of counsel

Plaintiffs' counsel recommend that the Court approve the settlement.  "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation omitted).  Counsel for Bakhtiar have extensive experience in litigating class and collective actions such as this one.  *See* ECF No. 108-1 ¶ 26.  This factor weighs in favor of approval.[4]

### e. The presence of a government participant

CAFA requires that notice be provided to the appropriate state and federal officials within ten days of the filing of a proposed class action settlement.  *See* 28 U.S.C. § 1715(b).  "An order

---

[4] The Court considers this factor, as it must, but gives it little weight.  "[A]lthough a court might give weight to the fact that counsel for the class or the defendant favors the settlement, the court should keep in mind that the lawyers who negotiated the settlement will rarely offer anything less than a strong, favorable endorsement."  Principles of the Law of Aggregate Litigation § 3.05 cmt. a (Am. Law. Inst. 2010).

United States District Court
Northern District of California

giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b)." *Id.* § 1715(d).

ISI has already served notice of the settlement on the appropriate federal and state officials. *See* ECF No. 121-2 ¶ 5.4.  No government entity has filed any objection to the amended settlement agreement.  Accordingly, this factor weighs in favor of granting preliminary approval.  *See Garner v. State Farm Mut. Auto. Ins. Co.*, CV 08 1365 CW EMC, 2010 WL 1687832, at *15 (N.D. Cal. Apr. 22, 2010) ("Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures.").

## B.      Certification for settlement purposes

### 1.      Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).

The Court concludes that Bakhtiar has shown that the California settlement class contains 77 members.  This number is sufficiently numerous that joinder would be impracticable.  Accordingly, this factor is satisfied.

### 2.      Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  A common question is one "capable of classwide resolution . . . which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  For the purposes of Rule 23(a)(2), "even a single common question" is sufficient.  *Id.* at 359 (quotation marks and internal alterations omitted).

Bakhtiar asserts that commonality exists because there are questions of law or fact common to the California settlement class, such as whether California-based Client Service Managers worked more than 40 hours per week or eight hours per day and were improperly

classified as exempt from California wage-and-hour law based upon the administrative exemptions that ISI has raised as defenses. *See* ECF No. 121 at 16-17. The Court concludes that these are indeed common questions and that the commonality requirement is therefore met.

### 3.  Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

The Court concludes that Bakhtiar's claims are typical of the claims of the California settlement class members, because Bakhtiar's claims arise out of the same course of conduct and are based on the same theories as the claims of the California settlement class members. Accordingly, this factor is also met.

### 4.  Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This "requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego*, 213 F.3d at 462.

The Court finds that Bakhtiar and her counsel will fairly and adequately represent the interests of the members of the California settlement class. The record lacks any indication that Bakhtiar or her counsel have any conflict of interest with members of the California settlement class, and it shows that counsel have significant experience in litigating complex class actions such as this one. The adequacy requirement is therefore satisfied.

United States District Court
Northern District of California

### 5.      Predominance and superiority

Finally, Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *Hanlon*, 150 F.3d at 1022.   Similarly, "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation."  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

The Court concludes that common questions of law and fact predominate here, such as whether California-based Client Service Managers worked more than 40 hours per week or eight hours per day and were improperly classified as exempt from California wage-and-hour law based upon the administrative exemptions that ISI has raised as defenses.  The Court further concludes that a class action is a superior method for adjudicating the controversy.  Litigating the claims of the California settlement class members in a single action would be far more efficient than litigating their claims individually.

Because the California settlement class meets all of the requirements of Rules 23(a) and 23(b)(3), the Court conditionally certifies the California settlement class for the purpose of settlement.

### C.      Notice plan

Under Federal Rule of Civil Procedure 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  The notice must state in plain, easily-understood language:

19

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Here, as described above, ISI will provide to the settlement administrator the last-known mailing address and other known contact information of the members of the settlement classes, and within 20 days of preliminary approval, the settlement administrator will send a notice specifically tailored to each settlement class by first-class mail, as well as by email and text message to those for whom email and cell phone numbers are available in ISI's human resources database. ECF No. 121-2 ¶¶ 6.1, 6.2, 6.9. Bakhtiar's counsel also will maintain a website with links to relevant case and settlement documents, and a telephone number, email address, and post office box to receive communications from members of the settlement classes. *Id.* ¶ 6.13. The Court concludes that this proposed notice plan is the best one practicable and satisfies the requirements of Rule 23 and due process.

The three proposed notices, each of which will be sent to each of the three settlement classes, are attached as Exhibits A, B, and C to the amended settlement agreement, ECF No. 121-2. While Bakhtiar corrected some of the errors and deficiencies that the Court identified in its order of January 30, 2020, ECF No. 119, the three proposed notices continue to contain errors that must be corrected before the Court can authorize their issuance to members of the settlement classes, as follows:

The proposed notice that is Exhibit A to the amended settlement agreement, ECF No. 121-2 at 49, is intended for members of the California settlement class only. Accordingly, this notice should not include *any* statements suggesting that the members of the California settlement class could also be members of the FLSA settlement class, because members of both of these settlement classes (i.e., the hybrid settlement class members) will receive a different notice, namely Exhibit C to the amended settlement agreement. Accordingly, counsel shall review the *entire* California settlement class notice (Exhibit A) and remove any language that suggests that California

20

settlement class members could also be members of the FLSA settlement class. *See, e.g.*, ECF No. 121-2 at 49 ("Important notification to potential class and collective action members"); *id.* (stating that a California settlement class member will receive a gross allocation from the settlement if he or she does not "withdraw an existing FLSA consent-to-join"); *id.* at 51 ("Receive a FLSA settlement payment, if you opted into the case").

The proposed notice that is Exhibit B to the amended settlement agreement, ECF No. 121-2 at 64, is intended for members of the FLSA settlement class only. Accordingly, this notice should be revised so that it is directed to actual collective action members and not "potential" collective action members. *See id.* ("Important notification to *potential* collective action members") (emphasis added).

The proposed notice that is Exhibit A to the amended settlement agreement states a "gross allocation" amount on the first page of the notice, *see* ECF No. 121-2 at 49, whereas the proposed notice that is Exhibit B to the amended settlement agreement states a "net allocation" amount on the first page of the notice, *see* ECF No. 121-2 at 64. Counsel do not explain the discrepancy between the proposed notices. Gross allocation and net allocation do not refer to the same thing according to the amended settlement agreement.

The proposed notices state that there are 137 total settlement class members, *see, e.g.*, 121-2 at 50, 64, but the correct number according to the amended settlement agreement is 129.

The case number listed in the proposed notices is incorrect. *See, e.g.*, ECF No. 121-2 at 53, 60. The correct case number is 4:17-cv-04559-JST. Further, the chambers of the undersigned is located in Oakland, not San Francisco. Accordingly, the proposed notices shall direct settlement class members to send any objections to the Clerk for the United States District Court for the Northern District of California, at 1301 Clay Street, 4th Floor, Oakland, California, 94612. Also, the proposed notices shall state that the final fairness hearing will be held at the federal courthouse located at this same address in Oakland.

The proposed notices continue to use the term "pro rata" instead using simpler language, such as "proportional." *See, e.g.*, ECF No. 121-2 at 55.

The proposed notices continue not to state the net amount that will be available to

1  distribute to members of the settlement classes after deducting amounts for attorneys' fees, costs,

2  the service award, etc.  *See, e.g.*, ECF No. 121-2 at 55.

3        The proposed notices do not describe the documentation that a settlement class member

4  must submit to dispute the settlement administrator's determinations as to the number of

5  workweeks worked.  *See, e.g.*, ECF No. 121-2 at 57.

6        The job classifications for which ISI will review job responsibilities as required under

7  paragraph 4.15 of the amended settlement agreement do not match the job classifications listed in

8  the proposed notices.  *See, e.g.*, ECF No. 121-2 at 55.  The description of the non-monetary relief

9  described in the proposed notices shall match exactly what is described in the amended settlement

10  agreement.

11        The proposed notices do not include the toll-free number that settlement class members

12  can call to obtain more information about the settlement.  *See, e.g.*, ECF No. 121-2 at 62.

13  **CONCLUSION**

14        For the reasons set forth above, the Court (1) conditionally certifies the California

15  settlement class for settlement purposes only; (2) preliminarily approves the amended settlement

16  agreement, notice plan, and allocation plan; and (3) preliminarily appoints Brian Schwartz Law as

17  counsel for the settlement classes, Bakhtiar as class representative, and Rust Consulting as

18  settlement administrator.

19        Within seven days of the date this order is issued, Bakhtiar shall carefully review each of

20  the proposed notices, in their entirety, and shall correct each instance of the types of errors

21  described above and shall file revised proposed notices for the Court's review, as well as redlines

22  showing any changes made to the proposed notices.  The Court will set a date for the final fairness

23  hearing once the Court approves the revised proposed notices and authorizes the dissemination of

24  such notices to the settlement classes.

25        **IT IS SO ORDERED.**

26  Dated:  August 4, 2020



27                          JON S. TIGAR

28                     United States District Judge

United States District Court<br>Northern District of California