BRYAN SCHWARTZ LAW
BRYAN SCHWARTZ (SBN 209903)
SAMUEL GOLDSMITH (SBN 320471)
180 Grand Avenue, Suite 1380
Oakland, California 94612
Tel. (510) 444-9300
Fax (510) 444-9301
Email: bryan@bryanschwartzlaw.com
      samuel@bryanschwartzlaw.com

Attorneys for Plaintiff Iram Bakhtiar
Individually and all others similarly situated

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRAM BAKHTIAR, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>INFORMATION RESOURCES, INC.,<br><br>        Defendant. | Case No. 4:17-cv-04559-JST<br><br>**NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT**<br><br>Initial Complaint Filed: August 9, 2017<br><br>Date: February 10, 2021<br>Time: 2:00 p.m.<br>Place: Courtroom 6, Second Floor<br>Judge: Hon. Jon S. Tigar |

**NOTICE OF MOTION AND MOTION**

**TO THE COURT AND ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that a hearing will be held on this Unopposed Motion for Final Approval of Class Action Settlement and for Approval of FLSA Collective Action Settlement of Plaintiff Iram Bakhtiar ("Plaintiff") regarding her settlement with Defendant Information Resources, Inc. ("Defendant," together with Plaintiff, the "Parties"). The hearing will be held on February 10, 2021, at 2:00 pm in the Courtroom of the Honorable Jon S. Tigar, located at Courtroom 6, 2nd Floor, 1301 Clay Street, Oakland, CA 94612. At the hearing, the Parties will request that the Court: (a) grant final approval of the Amended Settlement Agreement; (b) award a service payment to the Representative Plaintiff; (c) award attorneys' fees and costs (the subject of Plaintiff's contemporaneously filed Motion for Attorneys' Fees and Costs); and (d) enter judgment pursuant to the Settlement Agreement.

The Court granted preliminary approval of the Amended Settlement Agreement in this matter on August 4, 2020, and required revised class notices (ECF No. 131), which were approved on October 8, 2020 (ECF No. 139). Support for the Amended Settlement Agreement from the Class has been nearly universal. No one has objected to the Amended Settlement Agreement and there was only one request for exclusion out of 129 Class Members (less than 0.8%). The proposed settlement is fair, adequate, and reasonable.

The Motion is based upon the Unopposed Motion for Final Approval of Class Action Settlement and for Approval of FLSA Collective Action Settlement and the Memorandum of Points and Authorities in support thereof; the Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class, filed on June 28, 2019 (ECF No. 108); Defendants' Statement of Non-Opposition thereto (ECF No. 109); the Renewed Motion for Preliminary Approval filed March 16, 2020 (ECF No. 121) and the Court's August 4, 2020, order granting the same (ECF No. 131); all declarations submitted in support of these motions (ECF Nos. 108-1, 108-9, 121-1, 121-12, and 121-13); the Declaration of Bryan J. Schwartz, Esq., in support of the concurrently filed Motion for Attorneys' Fees and Costs ("Schwartz Decl.") and the exhibits

attached thereto; the Declaration of Abigail Schwartz (Program Manager of Claims Administrator Rust Consulting, "Rust Decl."); the complete files, records, and pleadings in the above-captioned matter; and such additional matters as the Court may consider. A Proposed Order is submitted herewith.

Dated: January 6, 2021

BRYAN SCHWARTZ LAW

By: _____/s/ Bryan J. Schwartz_____
BRYAN J. SCHWARTZ
SAMUEL GOLDSMITH

*Attorneys for Plaintiff and the Putative Class*

**TABLE OF CONTENTS**

I.      INTRODUCTION...................................................................................................... 1

II.     RELEVANT PROCEDURAL BACKGROUND ...................................................... 2

III.    THE SETTLEMENT IS AN EXCEPTIONAL RESULT AND THE CLASS

        MEMBERS MADE INFORMED DECIONS TO PARTICIPATE ............................ 2

        A.    The Settlement Agreement Provides Substantial Recovery for Class Members ..... 2

        B.    The Notice Process Encompassed Efforts to Reach Every Class Member and

              Ensure Maximum Opporunity for Class Members to Benefit ................................. 3

        1.    The Notice Process Fulfilled the Promises Made on Preliminary Approval ................. 3

        2.    The Reaction of Class Members Indicates Universal Support for the Settlement ......... 5

        3.    The Parties Provided Notice to the Relevant Government Agencies ........................... 5

VI.     THE COURT SHOULD GRANT FINAL APPROVAL ................................................. 5

        A.    The Amended Settlement Agreement is Fair, Adequate, and Reasonable,

              Warranting Final Approval and Entry of Judgment ................................................. 5

        B.    Each Factor Weighs in Favor of Final Approval ..................................................... 6

        1.    The Amended Settlement Was Non-Collusive and Was the Product of Extensive

              Negotiations ............................................................................................................ 6

        2.    The Court Should Weigh the Strength of Plaintiff's Case Against the Risk, Expense,

              Complexity, and Likely Duration of Further Litigation, and the Risk of

              Maintaining Class Certification Through Trial ......................................................... 7

        3.    The Amount of the Settlement Weighs in Favor of Final Approval ............................ 7

        4.    The Stage of Proceedings Favors this Settlement ..................................................... 9

        5.    The Able Class Representation and Class Counsel's Support for the Agreement

              Support Final Approval ........................................................................................... 9

        6.    The Government's Non-Participation Supports Final Approval, in Light of the

i

Reasonable PAGA Settlement ............................................................... 10

7.  The Amended Settlement Agreement is also Reasonable under the FLSA's Review

Standard ................................................................................................ 10

8.  The Positive Reaction of the Class Favors Final Approval ......................... 11

C.     All Additional Settlement Terms are Fair ................................................. 12

1.  The *Cy Pres* Beneficiary is Appropriate ...................................................... 12

2.  The Service Payment for Representative Plaintiff is Appropriate .............. 13

**V.     CONCLUSION.......................................................................................... 14**

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alexander v. FedEx Ground Pkg. Sys., Inc.*,
 2016 WL 1427358 (N.D. Cal. 2016) ...................................................................10

*Alila-Katita, et al. v. U.S. Bank Nat'l Ass'n*,
 (N.D. Cal. Jul. 13, 2016) .....................................................................................7

*Bellinghausen v. Tractor Supply Co.*,
 306 F.R.D. 245 (N.D. Cal. 2015) ....................................................................8,13

*Campbell v. City of Los Angeles*,
 903 F.3d 1090 (9th Cir. 2018)...............................................................................7

*Class Plaintiffs v. City of Seattle*,
 955 F.2d 1268 (9th Cir. 1992)...............................................................................7

*Cody v. Hillard*,
 88 F.Supp.2d 1049 (D.S.D. 2000)........................................................................12

*Colman v. AIG Domestic Claims, Inc.*,
 2009 WL 10673332 (C.D. Cal. Feb. 9, 2009) .....................................................11

*Cotter v. Lyft, Inc.*,
 193 F.Supp.3d 1030 (N.D. Cal. 2016) ...................................................................6

*Cruz v. Sky Chefs, Inc.*,
 2014 WL 7247065 (N.D. Cal. 2014) ...................................................................10

*Dennis v. Kellogg Co.*,
 697 F.3d 858 (9th Cir. 2013)................................................................................12

*Dent v. ITC Serv. Grp., Inc.*,
 2013 WL 5437331 (D. Nev. Sept. 27, 2013) .......................................................14

*Franklin v. Kaypro Corp.*,
 884 F.2d 1222 (9th Cir. 1989)................................................................................5

*Glass v. UBS Fin. Servs., Inc.*,
 2007 WL 221862 (N.D. Cal. 2007) ......................................................................13

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998)................................................................................6

*Hopson v. Hanesbrands, Inc.*,
 2009 WL 928133 (N.D. Cal. Apr. 3, 2009) .........................................................14

*In re Am. Bank Note Holographics, Inc.*,
 127 F.Supp.2d 418 (S.D.N.Y. 2001)....................................................................11

*In re Art Materials Antitrust Litig.*,
 100 F.R.D. 367 (N.D. Ohio 1983) .......................................................................12

*In re Bluetooth Headset Products Liab. Litig.*,
 654 F.3d 935 (9th Cir. 2011)...............................................................................6,8

*In re Omnivision Technologies*,
 559 F.Supp.2d 1036 (N.D. Cal. 2008) ..................................................................8

UNOPPOSED MOTION FOR
FINAL APPROVAL /
Case No. 3:17-cv-04559-JST

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008)...........................................................................7

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*,
   2017 WL 2212780 (N.D. Cal. 2017) ..............................................................10

*Laguna v. Coverall N. Am., Inc.*,
   753 F.3d 918 (9th Cir. 2014)..............................................................................8

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998)............................................................................9

*Lynn's Food Stores, Inc. v. U.S.*,
   679 F.2d 1350 (11th Cir.1982)..........................................................................11

*Ma v. Covidian Holding, Inc.*,
   2014 WL 360196 (C.D. Cal. 2014)......................................................................8

*Mandujano v. Basic Vegetable Prods., Inc.*,
   541 F.2d 832 (9th Cir. 1976).............................................................................11

*Mar v. Genuine Parts Co.*,
   2017 WL 1495098 (E.D. Cal. Apr. 26, 2017)....................................................11

*Milligan v. Toyota Motor Sales, U.S.A., Inc.*,
   2012 WL 10277179 (N.D. Cal. Jan. 6, 2012) .....................................................6

*Nat'l Rural Telcomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................7,10

*Officers for Justice v. Civil Service Commission of SF*,
   688 F.2d 615 (9th Cir. 1982)........................................................................6,8,9

*Rodriguez v. West Publ.*,
   563 F.3d 948 (9th Cir. 2009)..............................................................................8

*Rosenburg v. IBM*,
   2007 WL 2043855 (N.D. Cal. 2007) ..................................................................9

*Ross v. U.S. Babk Nat. Ass'n*,
   2010 WL 3833922 (N.D. Cal. Sept. 29, 2010) .................................................13

*Rutti v. Lojack Corp.*,
   2012 WL 3151077 (C.D. Cal. July 31, 2012) ...................................................13

*Satchell v. Fed. Exp. Corp.*,
   2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .....................................................6

*Scandoval v. Tharaldson Employee Management, Inc.*,
   2010 WL 2486346 (C.D. Cal. June 15, 2010) ...................................................14

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003).............................................................................13

*Viceral v. Mistras Grp. Inc.*,
   2017 WL 661352 (N.D. Cal. Feb 17, 2017).......................................................10

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002)............................................................................8

*Willner v. Manpower Inc.*,

iv

2015 WL 3863625 (N.D. Cal. June 22, 2015) .............................................................9

*Van Vranken v. Atl. Richfield Co.*,
    901 F.Supp.294 (N.D. Cal. 1995) .......................................................................13

*Vazquez v. USM Inc.*,
    2016 WL 612906 (N.D. Cal. Feb. 16, 2016) ........................................................10

**State Cases**

*Duran v. U.S. Bank Nat. Assn.*,
    59 Cal.4th 1 (2014) ...............................................................................................7

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
    130 F.R.D. 366 (S.D. Ohio 1990) .......................................................................12

**Federal Statutes, Rules and Regulations**

29 U.S.C. §216(b) ....................................................................................................10

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

This Court granted preliminary approval of the Amended Settlement Agreement in this wage-and-hour class and collective action matter on August 4, 2020, and approved the class notices on October 8, 2020. Nothing has occurred since this Court granted preliminary approval of the Settlement and notices to cause the Court to revisit its assessment that the Amended Settlement Agreement is fair, adequate, and reasonable to the Class and collective. Near universal support for the settlement confirms that it is a strong result. The Court should grant final approval of the Class settlement and approve the federal Fair Labor Standards Act ("FLSA") collective action settlement.

Plaintiff Bakhtiar brought the action on behalf of Client Service Managers, Client Solutions Managers, Client Service Analysts, Client Service Consultants, and other similar, non-management positions (collectively, "Client Service Managers"). The Court granted preliminary approval of the $2.25 million settlement which will provide an average gross recovery of more than $17,500/each (over $12,500/each net). As discussed in Plaintiff's Motion for Preliminary Approval, by this Settlement, Defendant commits to a significant corporate reform, consisting of position audits and reclassification, which will have long-term benefits for absent Class Members. The Court should have no hesitation in granting final approval now.

If this case had failed to settle, Plaintiff and Defendant each maintain they would have prevailed ultimately as to class certification and the exemption disputes. Plaintiff would have had to take and defend numerous depositions, win and maintain through trial class and collective action certification, and survive Defendant's motion for summary judgment. These risky and expensive propositions would have, at minimum, greatly delayed and possibly diluted recovery for Class Members. Moreover, the Class faced the prospect of no recovery at all if a finder of fact found for the Defendant, given the lack of definitive case law directly on point.

Despite the litigation and financial risks, and after nearly 3.5 years of litigation, Plaintiff is seeking final approval of a settlement so Class Members can promptly receive meaningful financial recovery and injunctive relief. In granting final approval, the Court should award the requested

UNOPPOSED MOTION FOR
FINAL APPROVAL /
Case No. 4:17-cv-04559-JST

service payment to the Representative Plaintiff, the benchmark fees plus modest costs sought, and enter judgment pursuant to the settlement agreement.

## II.    RELEVANT PROCEDURAL BACKGROUND

Plaintiff described the procedural history of this matter in her Motion for Preliminary Approval (ECF No. 108, 1-2), filed on June 28, 2019. The parties conducted significant discovery, conducted two mediations nearly a year apart, and after vigorous additional negotiation, arrived at this Settlement. Since then, the Court denied without prejudice the preliminary approval motion on January 30, 2020. ECF No. 119. Plaintiff filed her renewed motion for preliminary approval on March 16, 2020, along with an amended settlement agreement. ECF No. 124. The Court granted the renewed motion on August 4, 2020, approved the amended settlement agreement, and required Plaintiff to submit revised class notices. ECF No. 131. Plaintiff did so on August 6, 2020. ECF No. 136. On September 3, 2020, the Court issued a second notice regarding revisions to the class notices. ECF No. 137. Plaintiff filed revised notices the following day, September 4, 2020. ECF No. 138. The Court approved these notices on October 8, 2020. ECF No. 139.

## III.    THE SETTLEMENT IS AN EXCEPTIONAL RESULT, AND THE CLASS MEMBERS MADE INFORMED DECISIONS TO PARTICIPATE.

### A.    The Settlement Agreement Provides for Substantial Recovery for Class Members.

As described previously in the Motion for Preliminary Approval and the Amended Settlement Agreement, out of the $2,250,000, the Settlement calls for:

- a net payment of $1,616,015 to the putative class members, none of which will revert to Defendants (ECF No. 121-2 at §§ 2.23, 4.1, 7.3, 7.4);

- 25% of the settlement amount to be allocated in attorneys' fees (*id.* at § 4.4);

- $16,875 in penalty payments to the Labor and Workforce Development Agency (*id.* at § 4.5);

- $24,610 in costs (*id.* at § 2.23);

- $15,000 in Settlement Administration costs (*id.* at § 2.23); and

- $15,000 as a service payment to representative Plaintiff Iram Bakhtiar (*id.* at §§ 2.28, 4.3).

Each Class Member's allocation will be a *pro rata* share of the net settlement payment based upon each Class Member's number of workweeks worked for Defendant during the relevant

class period. *Id*. at § 4.7. Members of the California Class who are not members of the FLSA Collective will be allocated a 1.75-times higher per-workweek payment in light of the expanded rights and remedies available under California law, and individuals who belong to both the California Class and the FLSA Collective will be allocated a 2.0-times higher per-workweek payment. *Id*. at § 4.7. One percent of the settlement fund will cover penalties under PAGA. Any unclaimed funds as a result of checks that remain uncashed 120 days after mailing will be distributed *cy pres* to the Workers' Rights Clinic at UC Hastings, except to the extent the Court approves reimbursement of Rust first (as discussed below). *Id*. at § 10.3. All participating Class and Collective Action Members will be subject to the judgment and release of claims. *Id*. at § 7.5.

In addition to substantial monetary relief, the Amended Settlement Agreement provides for significant corporate reform. Defendant has agreed to review the job responsibilities for the following job classifications: Client Service, Analyst, Levels 1, 2, and 3; Client Service Consultant, Level 1; Client Insights, Analyst, Levels 1, 2, and 3; and Client Insights, Consultant, Level 1. *Id*. at § 4.15. Based on this review, which defendant began upon execution of the original Settlement Agreement, Defendant will either: (1) reassign the employee to a position with the appropriate classification, (2) modify the job duties of the employee so that they can remain classified as exempt, and (3) determine that no change need be made. *Id*. Defendant has committed to providing Plaintiff's counsel with a status report regarding each employee in one of the above job classifications and whether that employee has been reclassified, not later than fourteen days before the Final Fairness Hearing. *Id*. Defendant will provide Plaintiff's counsel with updated reports every six months for two years. *Id.*

**B.  The Notice Process Encompassed Efforts to Reach Every Class Member and Ensure Maximum Opportunity for Class Members to Benefit.**

**1.  The Notice Process Fulfilled the Promises Made on Preliminary Approval.**

In accordance with the Court's Order granting preliminary approval of the Amended Settlement Agreement, Rust Consulting executed the notice and administration procedures. Rust Decl. ¶ 10. The approved Class Notice described the litigation, the terms of the Amended Settlement Agreement, and the respective options for proposed California Class and FLSA Collective Members to participate in (and, in the case of California Class Members, to object to)

UNOPPOSED MOTION FOR
FINAL APPROVAL /
Case No. 4:17-cv-04559-JST

the Amended Settlement. Rust Decl., Exh. A. The Notice also stated, on its face, the minimum Settlement payment amount that the recipient would receive if he or she remained in the class and/or collective action. *Id.* The three class notices were specifically tailored to members of the California Class, FLSA Collective, or those with "hybrid" claims, *i.e.*, both California and FLSA Collective claims.

Rust Consulting set up a mailing address to receive exclusions, objections, disputes, and undeliverable Class Notices, as well as a toll-free number and email address. Rust Decl. ¶¶ 4-6. The Class List was processed through the National Change of Address database ("NCOA") (*id.* at ¶ 8) and the Court-approved text for the notices was formatted and mailed on October 28, 2020. *Id.* at ¶¶ 9-10; Exh. A to *id.* Class Members with email and text addresses available also received their notices via these media. *Id.* at ¶ 10. Rust also performed address traces on a handful of undeliverable notices and remailed them, and received updated address information from the one Class Member whose address had not been found, such that ultimately all 129 notices were delivered. *Id.* at ¶¶ 11-14. There were: no objections; one Class Member dispute regarding workweeks, which was resolved; and one exclusion request. *Id.* at ¶¶ 15-17. Rust will provide a supplemental declaration shortly before the final fairness hearing confirming these totals. *Id.* at ¶ 19.

Rust initially made a calculation error which overstated a handful of Class Members' recovery in their notices. *Id.* at ¶ 18. After Rust notified the Parties' counsel of this error, Plaintiff's counsel obtained Rust's agreement that Rust would contribute the additional amount needed to ensure that no Class Member would receive an allocation less than that which was contained on her/his notice. *Id.*; Schwartz Decl. ¶ 7. This was so that Class Members would not need to receive additional notices disappointing them, that their allocations were less than originally stated in the first notices, on account of Rust's error. Schwartz Decl. ¶ 7. Class Counsel agreed that it would be equitable for Rust to request from the Court that it be reimbursed for the additional amount it is contributing ($18,977.69) prior to any payment to *cy pres*, from any uncashed checks. Schwartz Decl. ¶ 7. Rust's request is included in its declaration. Rust Decl. at ¶ 18.[1]

In sum, Counsel worked diligently with Rust to ensure that Class Members and Collective Members were aware of this settlement and had the opportunity to consider the terms of the

---

[1] The consequence of this error is actually a benefit to the Class – the total gross recovery will be $2.25 million, plus $18,977.69, such that the average gross recovery increases to $17,726.39/each – with an additional amount contributed for the employer's share of payroll taxes, and the added benefits of employer reforms for current IRI Client Service Managers. Because the administrator is repairing its error – even at the risk of losing money on the administration of this Settlement – this incident should give the Court no pause in granting final approval.

UNOPPOSED MOTION FOR
FINAL APPROVAL /
Case No. 4:17-cv-04559-JST

settlement, and to respond to all Class Members' and Collective Members' inquiries through various media. The Class and collective have overwhelmingly embraced the Settlement and are eager for its approval.

### 2. The Reaction of Class Members Indicates Universal Support for the Settlement.

As of this filing, there has not been a single objection and only a single request for exclusion from the settlement. Rust Decl. ¶ 16-17. The parties established a procedure for Class Members to dispute their award if they believed the data used to calculate their award was erroneous. (Amended Settlement § 6.14) Only one individual disputed her award, but did not pursue the dispute after being educated on the Settlement terms, realizing the dispute was without merit. (Rust Decl. ¶ 15; Schwartz Decl. at ¶ [x]).

### 3. The Parties Provided Notice to the Relevant Government Agencies.

Undersigned counsel provided notice of the PAGA settlement to the California Labor Workforce Development Agency. Schwartz Decl. ¶ 20. The Parties received no objection from the agency. *Id*.

## IV.    THE COURT SHOULD GRANT FINAL APPROVAL.

### A. <u>The Amended Settlement Agreement is Fair, Adequate, and Reasonable, Warranting Final Approval and Entry of Judgment.</u>

Federal law strongly encourages settlements in the context of class actions. *See, e.g.*, *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("overriding public interest in settling and quieting litigation" is "particularly true in class action suits"). When reviewing a motion for approval of a class settlement, the Court should give due regard to "what is otherwise a private consensual agreement negotiated between the parties," and must limit the inquiry "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F. 2d 615, 625 (9th Cir. 1982).

The Ninth Circuit has identified several other factors to be considered, in addition to the principal inquiry as to the lack of improper collusion: (1) the strength of the plaintiffs' case; the

UNOPPOSED MOTION FOR
FINAL APPROVAL /
Case No. 4:17-cv-04559-JST

risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; (2) the amount offered in settlement; (3) the extent of discovery completed and the stage of the proceedings; (4) the experience and views of counsel; (5) the presence of a governmental participant; and (6) the reaction of the class members to the proposed settlement. *Cotter v. Lyft, Inc.*, 193 F.Supp.3d 1030, 1035-1037 (N.D. Cal. 2016) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Here, all relevant factors weigh in favor of final approval.

### B. Each Factor Weighs in Favor of Final Approval.

The Amended Settlement Agreement is a strong result where success was uncertain.

### 1. The Amended Settlement Was Non-Collusive and Was the Product of Extensive Negotiations.

As the Court found in granting preliminary approval, evaluating the factors outlined in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946-947 (9th Cir. 2011), there are no signs of collusion here. ECF No. 131 at 10-12. Among other things, there were two lengthy mediations with a highly experienced mediator. ECF No. 108-1 ¶¶ 6-8; *see also Satchell v. Fed. Exp. Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milligan v. Toyota Motor Sales, U.S.A., Inc.*, 2012 WL 10277179, at *4 (N.D. Cal. Jan. 6, 2012) (granting final approval in consumer class action, noting with approval that "[n]egotiations were overseen by a qualified mediator" with respect to lack of collusion and adequacy of class counsel). The Parties did not settle during the first mediation session on April 23, 2018, and instead conducted further discovery practice until Plaintiff could secure a fair deal for the Class, underscoring the arm's-length nature of the negotiations resulting in the Amended Settlement Agreement.

### 2. The Court Should Weigh the Strength of Plaintiff's Case Against the Risk, Expense, Complexity, and Likely Duration of Further Litigation, and the Risk of Maintaining Class Certification Through Trial.

The uncertain outcomes of winning and maintaining class and collective action certification and prevailing at trial and on appeals create a strong incentive for the Parties to settle. In the Ninth

6

Circuit, "a strong judicial policy [] favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). This policy is in part because there are significant risks associated with continued complex class action litigation. A successful class certification motion may have drawn a Federal Rule of Civil Procedure 23(f) appeal. A decertification motion and resulting appeal could cause further delay. *See, e.g.*, *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1120-1121 (9th Cir. 2018) (decertifying 14-year-old FLSA collective action based on off-the-clock claims). If Plaintiff successfully maintained a class and prevailed at trial, post-judgment appeals could follow. Litigation in *Duran v. U.S. Bank*, for example, lasted over 15 years, when the plaintiffs' trial victory was challenged on appeal and was eventually reversed and remanded. *See Duran v. U.S. Bank Nat. Assn.*, 59 Cal.4th 1 (2014); *Alila-Katita et al v. U.S. Bank Nat'l Ass'n* (N.D. Cal. Jul. 13, 2016). As such, absent settlement, the Class might not recover for years. This Settlement, on approval, will achieve meaningful recovery without such lengthy delay.

As described at length in Plaintiff's Motion for Preliminary Approval (ECF No. 108, 5-11), class and collective members faced considerable risks if this matter were to have been litigated further. Litigation of the administrative exemption is by nature risky, even after extensive litigation. *Id*. at 5-9. Likewise, certification of a misclassification case always faces uncertainty, and Defendant would have sought to show that class members' individual duties varied employee to employee. *Id*. at 10-11. Even if Plaintiff were to prevail and maintain class certification throughout, class recovery risked reduction if Defendant's actions were found not willful. *Id*. at 9-10. These risks favor the sure and excellent result procured in this settlement.

### 3. The Amount of the Settlement Weighs in Favor of Final Approval.

The Amended Settlement Agreement provides for a guaranteed payment of $2,250,000, plus the employer's share of payroll taxes, into a settlement fund. Accounting for funds for attorneys' fees and costs, administration fees, the LWDA, and the Representative Plaintiff's service payment, $1,616,015 will be distributed to class and collective action members. The settlement amount compares favorably with the estimated full relief for Plaintiff and the Class and Collective Action Members' claims. The Court found previously, "The Total Settlement Amount of

UNOPPOSED MOTION FOR
FINAL APPROVAL /
Case No. 4:17-cv-04559-JST

$2,250,000…equals 14.12% of the total possible recovery, which is a fair and reasonable percentage." ECF No. 131 at 15. Moreover, as described in the Motion for Preliminary Approval, Class counsel estimates the $2.25 million recovered is 32.99% of the total, best-day exposure in the case, before civil or statutory penalties, if the fluctuating workweek calculus were to apply. ECF No. 108 at 18. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 955 (9th Cir. 2009) (court may calculate settlement reasonableness without considering speculative penalties).

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628. "[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (Conti, J.). The result in this case compares favorably to that in *Ma v. Covidian Holding, Inc.*, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014), in which a settlement providing "9.1% of the total value of the action [was] 'within the range of reasonableness,'" despite recognizing that the plaintiff appeared "to have a fairly strong case." *Id.* at *4-5; *see also Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (approving settlement fund of $1 million representing 8.5% of the defendant's maximum total exposure).

The Court should also consider the prospective relief favorably, as warranting final settlement approval. *See, e.g.*, *In re Bluetooth*, 654 F.3d at 941  (considering that benefits to the class went beyond the settlement fund); *Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 922-23 (9th Cir. 2014) (depublished on other grounds) (taking injunctive relief into account in assessing settlement value); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002) ("Non-monetary benefits" to the Class, such as causing the defendant "to change its personnel classification practices," are "a relevant circumstance" in evaluating a class settlement); *Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair. . . . This is particularly true in cases, such as this, where monetary relief is but one form of the relief

UNOPPOSED MOTION FOR
FINAL APPROVAL /
Case No. 4:17-cv-04559-JST

1  requested by the plaintiffs.") (internal citations omitted). Factoring in Defendant's meaningful

2  reforms, as well as Defendant's payment of payroll taxes, this Settlement's recovery warrants

3  approval. *See Rosenburg v. IBM*, 2007 WL 2043855, at *3 (N.D. Cal. July 12, 2007) (noting

4  employer's payment of employer's share of payroll taxes factors favorably).

### 4. The Stage of Proceedings Favors this Settlement.

6  "Courts look to the amount of exchanged information prior to settlement to determine

7  whether the parties have made an informed decision to settle the case." *Willner v. Manpower Inc.*,

8  2015 WL 3863625, at *4 (N.D. Cal. June 22, 2015) (Tigar, J.); *Linney v. Cellular Alaska P'ship*,

9  151 F.3d 1234, 1239 (9th Cir. 1998). The Court has found that the parties conducted significant

10  discovery prior to agreeing to this Settlement. ECF No. 131 at 16. In particular, Plaintiff was well-

11  informed about the strengths and weaknesses of her case after Fed. R. Civ. P. 30(b)(6) and fact

12  witness depositions, two days of depositions of Plaintiff Bakhtiar, reviewing Defendants' written

13  policies, extensive correspondence plus investigative interviews with approximately 73 putative

14  Class Members around the country, more than 70,000 pages of document discovery, and litigation

15  concerning Plaintiff's motion for conditional class certification.

### 5. The Able Class Representation and Class Counsel's Support for the Agreement Support Final Approval.

18  As the Court has already found, the undersigned "have extensive experience in litigating

19  class and collective actions such as this one." ECF No. 131 at 16. The undersigned counsel has

20  negotiated many class and collective action settlements that were granted approval by this Court,

21  other District Courts nationwide, and state courts in California. Schwartz Decl. at ¶ 12. Class

22  Counsel has significant experience in both the substance of misclassification cases and the

23  procedures for class and collective actions. *Id*. Class Counsel wholly supports approval of this

24  Settlement, warranting this Court's consideration. *Id*. at ¶ 3. *See Nat'l Rural Telcomms. Coop. v.*

25  *DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the

26  recommendation of counsel, who are most closely acquainted with the facts of the underlying

27  litigation.") (citations omitted); *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and*

28

UNOPPOSED MOTION FOR
FINAL APPROVAL /
Case No. 4:17-cv-04559-JST

1  *Products Liability Litigation*, 2017 WL 2212780, at *9 (N.D. Cal. 2017) (Breyer, J.).

2

3  **6.  The Government's Non-Participation Supports Final Approval, in Light of the Reasonable PAGA Settlement.**

4  No government entity has filed an appearance in this matter. Schwartz Decl. ¶ 20. Plaintiff

5  complied with the PAGA's notice requirements to the California Labor Workforce Development

6  Agency ("LWDA"). Schwartz Decl. ¶ 20. Plaintiff exhausted her PAGA claim with the LWDA

7  and notified the LWDA of this settlement, and the LWDA chose not to intervene or otherwise take

8  any action in this case. (*Id.*; ECF No. 108-1, 16-17). One percent of the settlement fund (0.78% of

9  the maximum PAGA claims' value (ECF No. 131 at 6)) will be allocated towards PAGA penalties.

10  This amount is reasonable compared to allocation ratios approved in other class / PAGA hybrid

11  settlements. *See, e.g., Viceral v. Mistras Grp. Inc.*, 2017 WL 661352, at ** 1, 3 (N.D. Cal. Feb. 17,

12  2017) (Chen, J.) (approving PAGA penalties worth 0.33% of gross settlement and 0.15% of total

13  estimated value of PAGA claims); *Alexander v. FedEx Ground Pkg. Sys., Inc.*, 2016 WL 1427358,

14  at *2 (N.D. Cal. Apr. 12, 2016) (Chen, J.) (0.7% PAGA allocation); *Vazquez v. USM Inc.*, 2016

15  WL 612906, at *1 (N.D. Cal. Feb. 16, 2016) (Donato, J.) (0.67%); *Cruz v. Sky Chefs, Inc.*, 2014

16  WL 7247065, at *3 (N.D. Cal. Dec. 19, 2014) ) (Ryu, J.) (0.57%). The Amended Settlement

17  Agreement has a strong deterrent effect in the form of millions of dollars in compensation and

18  meaningful injunctive relief. Accordingly, and in light of the LWDA's abstention, the PAGA

19  allocation should be approved.

20

21  **7.  The Amended Settlement Agreement is also Reasonable under the FLSA's Review Standard.**

22  When an employee brings an action for wages under 29 U.S.C. § 216(b), the parties must

23  present any proposed settlement for approval. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350,

24  1353 (11th Cir. 1982). If the settlement is a "fair and reasonable resolution of a bona fide dispute

25  over FLSA provisions," approval is appropriate. *Id.* at 1355. Settlements of FLSA claims are

26  permissible because initiation of the action "provides some assurance of an adversarial context."

27  *Id.* at 1354. Employees are likely to be represented by an attorney who can protect their rights, so

28

UNOPPOSED MOTION FOR
FINAL APPROVAL /
Case No. 4:17-cv-04559-JST

(by contrast with the situation in *Lynn's Food Stores*, where an exploitative settlement was reached with unrepresented, non-English speakers), "the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights." *Id*. The same facts described above, which warranted this Court's preliminary approval, also demonstrate that the FLSA settlement is a reasonable compromise over numerous issues that both Plaintiffs and Defendant acknowledge to be hotly disputed. *See, e.g.*, *Colman v. AIG Domestic Claims, Inc.*, 2009 WL 10673332, at *2 (C.D. Cal. Feb. 9, 2009) (factors considered under "the two inquiries [for FLSA and class action approval] are essentially the same"). These include, but are not limited to, the propriety of collective treatment, liability for alleged misclassification, whether any violations were willful, the availability of liquidated damages, and the amount of Plaintiffs' damages. As the Court has already found, the settlement is for a fair and reasonable value. (ECF No. 131 at 16). Additionally, almost all of the FLSA opt-ins are participating in the settlement, which favors approval. *See Mar v. Genuine Parts Co.*, 2017 WL 1495098, at *2 (E.D. Cal. Apr. 26, 2017) (94% of opt-ins participating supported approval). Accordingly, the settlement satisfies the *Lynn's Food* standard, and the Court should approve the settlement of Plaintiffs' FLSA claims.

### 8. The Positive Reaction of the Class Favors Final Approval.

The Ninth Circuit and other federal courts have made clear that the number or percentage of class members who object to or opt out of the settlement is a very significant factor in determining whether to grant final approval. *See Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 837 (9th Cir. 1976); *see also In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) ("It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy") (internal quotation and citation omitted)); *Cody v. Hillard*, 88 F. Supp. 2d 1049, 1059-60 (D.S.D. 2000) (approving the relevant settlement in large part because only 3% of the apparent class had objected to the settlement); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990) (approving the relevant settlement and affording "substantial weight" to the fact that fewer than 5% of the class members elected to opt out of the settlement); *In re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 372 (N.D. Ohio 1983) (approving the settlement and holding that the fact

1  that none of the class members had objected and a small percentage opted out of the settlement was

2  "entitled to nearly dispositive weight").

3      No class action member objected to the settlement and only one opted out, and no collective

4  action member withdrew his or her consent form. Rust Decl. ¶ 16-17. Thus, the Court should

5  approve.

6      **C.  All Additional Settlement Terms are Fair.**

7      The requested attorneys' fees and costs (described in a separate concurrently filed motion),

8  enhancement payments, and *cy pres* designee are also appropriate, as discussed below.

9          **1.  The *Cy Pres* Beneficiary is Appropriate.**

10     For the reasons stated in Plaintiff's Motion for Preliminary Approval, the *cy pres*

11 beneficiary, the UC Hastings Workers Rights Clinic meets the test under *Dennis v. Kellogg Co*.,

12 697 F.3d 858, 865 (9th Cir. 2013) "that there be a [] nexus between the [] class and the *cy pres*

13 beneficiaries." This is a workers' rights suit seeking overtime and minimum wages, primarily for

14 workers in California. Under the supervision of attorneys from Legal Aid at Work,

15 (https://legalaidatwork.org), the leading provider of direct legal services in employment law for

16 low-wage workers in California, students in the Workers' Rights Clinic at UC Hastings College of

17 the Law perform valuable legal services for low-income workers, including conducting initial client

18 interviews, providing counseling and legal information, and offering referrals. Schwartz Decl. at

19 ¶ 23. Plaintiff's Counsel has no financial stake in this designation. *Id*. The Court should thus

20 approve this *cy pres* recipient.

21          **2.  The Service Payment for Representative Plaintiff is Appropriate.**

22     Plaintiff requests the Court's approval of an incentive payment of $15,000 to the named

23 Plaintiff, Iram Bakhtiar. This amount is justified here. *See, e.g.*, *Glass*, 2007 WL 221862, at *16

24 (approving payments of $25,000 to each named plaintiff); *Bellinghausen*, 306 F.R.D. at 268

25 (awarding named plaintiff in wage and hour class action $10,000 as a service award, and an

26 additional $5,000 award solely for the general release that the named plaintiff executed as part of

27 the settlement agreement); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal.

28 1995) (awarding $50,000 to a lead plaintiff). Enhancement awards should be evaluated using

12

UNOPPOSED MOTION FOR
FINAL APPROVAL /
Case No. 4:17-cv-04559-JST

"'relevant factors, includ[ing] the actions the Plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . the amount of time and effort the Plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s] of workplace retaliation.'" *Staton*, 327 F.3d at 963. As discussed in the Motion for Preliminary Approval (ECF No. 108, 20-22), the award requested is well supported, inasmuch as Plaintiff Bakhtiar is the lone class representative, without whom none of the 129 Class Members would have recovered at all, and none of the corporate reforms would have been implemented. She has submitted a declaration detailing her commitment to the class and the risks and harms to which she exposed herself by bringing the case. (ECF No. 180-9, "Bakhtiar Decl.") Plaintiff Bakhtiar experienced reputational risk (and "notoriety") as a result of bringing this case, severing ties with Defendant, subjecting herself to public scrutiny, and losing a source of job references and future employment opportunities. *See* Bakhtiar Decl. ¶¶ 16-17; *see also Rutti v. Lojack Corp.*, 2012 WL 3151077, at *5 (C.D. Cal. July 31, 2012) (citing research, noting the "strong disincentives for employees to participate in a class action against their current or former employer, particularly when the suit requires an affirmative opt-in, as does the FLSA"); *Ross v. U.S. Bank Nat. Ass'n*, 2010 WL 3833922, at *4 (N.D. Cal. Sept. 29, 2010) (service awards based on "willingness to serve as representatives despite the potential stigma that might attach to them in the banking industry from taking on those roles") (Illston, J.). Such considerations are all the more serious given the economic struggles wrought by the pandemic. At one point, Plaintiff Bakhtiar seriously considered abandoning the case due to the public exposure it brought her. Bakhtiar Decl. ¶ 15.

Plaintiff Bakhtiar has spent dozens of hours on this case, over more than three years of litigation, including: bringing this case as the lone named plaintiff; attending 12 hours of deposition over the course of two days months apart, and preparing with counsel over multiple days for the same; attending two full days of mediation in April 2018 and March 2019 in person, at her own cost; responding to 47 requests for production of documents and 25 interrogatories with the assistance of counsel; consulting extensively with Plaintiff's counsel about the case both before and after the case was filed, and attempting to locate and reach out to putative Class Members.

1   Bakhtiar Decl. at ¶¶ 17, 19-23. Plaintiff Bakhtiar's intimate involvement in her case has continued

2   since the preliminary approval motion was filed. Schwartz Decl. ¶ 9.

3       The personal benefit that Plaintiff Bakhtiar would receive if she received a settlement

4   payment only based upon her workweeks, like the rest of the Class Members, would not come close

5   to compensating her for the foregoing personal costs she has paid and stress she has endured in

6   order to benefit the Class. Had Plaintiff Bakhtiar proceeded individually, rather than sacrificing for

7   the Class, she might well have recovered more than her recovery as a Class Member here. She

8   delayed her own potential gain to ensure her former co-workers would be given the chance to

9   recover.

10      Finally, Lead Plaintiff Bakhtiar is executing a broader waiver of claims than other Class

11  Members, warranting additional compensation. 121-2 at § 4.11; *see, e.g.*, *Dent v. ITC Serv. Grp.,*

12  *Inc.*, 2013 WL 5437331, at *4 (D. Nev. Sept. 27, 2013) (awarding service payment in part because

13  wage-hour plaintiff signed a general release).

14      Therefore, the service payment amount of $15,000, just 0.67% of the total settlement fund,

15  is appropriate here. *See Hopson v. Hanesbrands, Inc.*, 2009 WL 928133, at *28 (N.D. Cal. Apr. 3,

16  2009) (Laporte, M.J.) (approving service award to named plaintiff constituting 1.25% of the total

17  settlement amount in wage and hour class actions); *Scandoval v. Tharaldson Employee*

18  *Management, Inc.*, 2010 WL 2486346, at *26-27. (C.D Cal. June 15, 2010) (approving incentive

19  payment constituting 1% of the total settlement value in wage and hour class action).

20  **V.      CONCLUSION**

21      For the foregoing reasons, Plaintiff submits that the proposed settlement is fair, adequate,

22  and reasonable. Plaintiff requests that the Court: (a) grant final approval of the Settlement; (b)

23  award the requested service payment of $15,000 to Representative Plaintiff Iram Bakhtiar; (c)

24  approve the attorneys' fees and costs awards (for the reasons described in the separate concurrently

25  filed fee/cost motion); and (4) enter the proposed order and judgment accordingly.

26

27

28  Dated: January 6, 2021                              */s/ Bryan J. Schwartz*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bryan J. Schwartz
Samuel L. Goldsmith
BRYAN SCHWARTZ LAW

UNOPPOSED MOTION FOR
FINAL APPROVAL /
Case No. 4:17-cv-04559-JST