UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRAM BAKHTIAR,<br><br>Plaintiff,<br><br>v.<br><br>INFORMATION RESOURCES, INC.,<br><br>Defendant. | Case No. 17-cv-04559-JST<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF AMENDED CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD**<br><br>Re: ECF Nos. 143, 144 |

Before the Court are Plaintiff Iram Bakhtiar's motions for final approval of an amended class action settlement and for attorneys' fees, costs, and a service award. The Court will grant the motions.

**I.    BACKGROUND**

**A.    The parties and claims**

This wage-and-hour action arises out of the alleged misclassification by Defendant Information Resources, Inc. ("IRI") of certain of its employees as exempt from federal and state overtime laws.

IRI is a market research company that offers business intelligence and analysis. Plaintiff Bakhtiar alleges that IRI employees in certain non-management positions (collectively, "Client Service Managers") were misclassified by IRI as exempt. Bakhtiar alleges that Client Service Managers are, in fact, non-exempt employees, because they perform basic client service and clerical tasks, namely "tasks without significant discretion, independence, or technical training or knowledge," ECF No. 108 at 11, and do not manage client accounts or advise clients concerning business strategy. Bakhtiar alleges that, as a result of this alleged misclassification, IRI

improperly denied Client Service Managers overtime wages, meal and rest periods, reimbursement of business expenses, and accurate itemized wage statements.

In the operative complaint, ECF No. 13, Bakhtiar asserts eight claims against IRI: (1) failure to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207; (2) failure to pay overtime wages in violation of California Labor Code §§ 510 and 1194; (3) failure to provide meal and rest periods in violation of California Labor Code §§ 226.7 and 512; (4) failure to provide accurate itemized wage statements in violation of California Labor Code § 226; (5) failure to pay wages upon discharge in violation of, and waiting penalties under, California Labor Code §§ 201-204; (6) failure to reimburse business expenses in violation of California Labor Code § 2802; (7) violations of the Unfair Competition Law ("UCL"), California Business and Professions Code § 17200; and (8) a claim for civil penalties under the Private Attorney General Act of 2004 ("PAGA"), California Labor Code § 2698.

Bakhtiar asserts these claims on her own behalf and on behalf of proposed classes under Rule 23 and a collective action under the FLSA.

> **Proposed California Class**: All persons who are or have been employed by IRI as Client Service Managers including Client Solutions Managers, Client Service Consultants, Client Service Analysts, and other similar, non-management positions, within the State of California at any time from four years prior to the filing of the initial Complaint through the final disposition of this case.
>
> **Proposed California Penalties Subclass**: All California Class Members who are or have been employed by IRI at any time within the year prior to the filing of the initial Complaint through the final disposition of this case.
>
> **Proposed California Waiting Time Penalties Subclass**: All California Class Members who no longer work for IRI and have not worked for IRI for more than 72 hours within three years prior to the filing of the initial Complaint through the final disposition of this case.
>
> **Collective Class**: All persons who are or have been employed by IRI as Client Service Managers including Client Solutions Managers, Client Service Consultants, Client Service Analysts, and other similar, non-management positions, within the United States at any time from three years prior to the filing of the initial Complaint through the final disposition of this case.

//

### B. Procedural history

Bakhtiar filed the first iteration of the complaint on August 9, 2017, ECF No. 1, and filed the operative complaint on October 13, 2017, ECF No. 13. Prior to filing the operative complaint, on August 9, 2017, Bakhtiar provided notice to the Labor and Workforce Development Agency ("LWDA") regarding her intention to commence an action under PAGA. ECF No. 13-2 at 2. IRI filed an answer to the operative complaint on October 27, 2017. ECF No. 16. On February 22, 2018, the Court denied IRI's motion to transfer this action to the Northern District of Illinois. ECF No. 38.

On July 26, 2018, the Court granted in part and denied in part Bakhtiar's motion for conditional certification under the FLSA. ECF No. 61. The Court granted conditional certification of the Collective Class described above. *Id.* The Court also approved Bakhtiar's proposed notice to the Collective Class, with a few modifications. *Id.* Other than the Collective Class, none of the classes described in the operative complaint have been certified.

After conducting discovery, Bakhtiar and ISI engaged in two mediation sessions before they entered into a settlement agreement. ECF No. 108-1 at 2-3.

In its order of January 30, 2020, the Court identified a number of deficiencies that precluded it from determining that the settlement fell within the range of approval, and it also noted that the proposed notices required corrections. *See* ECF No. 119 at 12-24. The parties amended the settlement agreement on March 16, 2020. ECF No. 121-2.

On August 4, 2020, the Court granted preliminary approval of the amended settlement agreement, but it required Bakhtiar to make further revisions to the proposed notices. ECF No. 131. On October 8, 2020, the Court approved the revised proposed notices and authorized the dissemination of the same to the members of the settlement classes, and it set the final fairness hearing for February 10, 2021. ECF No. 139.

The settlement administrator, Rust Consulting, Inc., mailed notices to the members of the settlement classes on October 28, 2020. ECF No. 144-6 ¶ 10.

On January 6, 2021, Bakhtiar moved for final approval of the amended settlement agreement, and for an award of attorneys' fees, costs, and a service award. ECF Nos. 143, 144.

1   No objections have been filed, and only one out of 129 members of the settlement classes opted

2   out. ECF No. 144-6 ¶¶ 15-17. The Court held a final fairness hearing on February 10, 2021.

### C. Terms of the amended settlement agreement

The amended settlement agreement, ECF No. 121-2, requires ISI to pay a Total Settlement Amount of $2,250,000. Out of this amount, the following amounts will be deducted before the Net Distribution Fund will be distributed to the members of the settlement classes who did not opt out or withdraw their FLSA consent: up to $15,000 for a service award to Bakhtiar; up to $562,500 in attorneys' fees (25% of the Total Settlement Amount); up to $25,000 in costs; up to $15,000 in costs of settlement administration; $16,875 for the LWDA's portion of the PAGA Payment[1]; and all employee-side payroll and employment taxes and tax expenses. ECF No. 121-2 ¶¶ 2.27, 2.6, 2.36. The Net Distribution Fund is estimated to be $1,615,625. *Id.* The Total Settlement Amount does not include employer-side payroll and employment taxes for wage payments under the amended settlement agreement, which ISI agrees to pay separately. *Id.* ¶ 2.36.

As part of the amended settlement agreement, IRI agreed to reevaluate the job responsibilities of persons who hold certain positions and to, among other things, provide status reports to class counsel for two years after the entry of final judgment with respect to its re-classification of these employees, if any. *Id.* ¶ 4.15.

The persons eligible to receive distributions from the Net Distribution Fund are grouped into three settlement classes. Each settlement class has its own release clause and its own procedures for deeming a settlement class member either eligible to receive a distribution as a member of the settlement class or excluded from the settlement class, as described in more detail below. The settlement classes are defined as follows:

> "California Class Members" means all individuals employed by Defendant within the state of California at any time from August 9, 2013, through May 30, 2019, and who have been employed by Defendant as Client Service Managers, Client Solutions Managers,

---

[1] Under the amended settlement agreement, "PAGA Payment" means a total payment of $22,500, or 1% of the Total Settlement Fund, to settle all claims under PAGA. From this amount, 75%, or $16,875, will be paid to the LWDA and 25%, or $5,625, will be distributed to members of the California settlement class. ECF No. 121-2 ¶ 2.28.

> Client Service Analysts, Client Service Consultants, and other similar, non-management positions, including Client Insights Analysts, and Client Insights Consultants. The California Class Members did not opt into the FLSA as collective action members and are not releasing FLSA Collective Claims. The California Class Members are only releasing their California Claims as a result of this settlement. The total number of California Class Members is 77 individuals.

*Id.* ¶ 2.2 ("California settlement class").

> "FLSA Collective Members" means all individuals who were employed by Defendant within the United States but outside of California as Client Service Managers, Client Solutions Managers, Client Service Analysts, Client Service Consultants, and other similar, non-management positions, including Client Insights Analysts, and Client Insights Consultants and who opted into this matter prior to March 6, 2019, the date of the second mediation in this case. The FLSA Collective Members are only releasing FLSA Collective Claims. . . . The total number of FLSA Collective Members is 46 individuals.

*Id.* ¶ 2.16 ("FLSA settlement class").

> "Hybrid Settlement Members" means all individuals who are both California Class Members and FLSA Collective Members. The Hybrid Settlement Members are releasing California Class Claims for the period they were employed in California and are also releasing FLSA Collective Claims. The total number of Hybrid Members is 6 individuals.

*Id.* ¶ 2.19 ("hybrid settlement class").

Out of the 129 members of the three settlement classes, which are identified in Exhibits 1 through 3 to the amended settlement agreement, ECF No. 121-2, only persons who did not opt out within 45 days from the date the notice was mailed ("settlement notice period") are eligible to receive payments as members of the California settlement class; only persons who did not withdraw their consent to join under the FLSA during the settlement notice period are eligible to receive payments as members of the FLSA settlement class; and only persons who did not withdraw their FLSA consent to join and did not opt out during the settlement notice period are eligible to receive payments as members of the hybrid settlement class. *Id.* ¶¶ 2.3, 2.17, 2.19, 2.23. A member of the California settlement class and hybrid class could object within 45 days of the date the notice was mailed.

The claims that the members of each of the settlement classes will release if they did not opt out or withdraw their FLSA consent, respectively, are the following:

> "California Class Claims" means all claims for wages, reimbursements and related penalties actually alleged or that could have been alleged in the Action by Plaintiff, on behalf of herself and the California Class Members, that arise out of the allegations alleged in the operative First Amended Complaint, including but not limited to: (1) Failure to Pay All Wages; (2) Failure to Pay Overtime under Cal. Labor Code §§ 510, 1194, and IWC Wage Orders; (3) Failure to Provide and/or Authorize Meal and Rest Periods under Cal. Labor Code §§ 226.7, 512, and IWC Wage Orders; (4) Failure to Provide Accurate Itemized Wage Statements under Cal. Labor Code § 226; (5) Failure to Pay Earned Wages Upon Discharge, Waiting Time Penalties under Cal. Labor Code §§ 201-204; (6) Failure to Reimburse Business Expenses under Cal. Labor Code § 2802; and (7) Unlawful and/or Unfair Business Practices in Violation of Cal. Business & Professions Code § 17200, et seq.; (8) penalties pursuant to the Private Attorneys General Act ("PAGA"), Cal. Labor Code § 2699, et seq.; and (9) attorneys' fees and costs of litigation associated with this Action. The California Class Claims do not encompass the FLSA Collective Claims and do not release any claims under the FLSA. . . .
>
> "FLSA Collective Claims" means all federal claims for wages, benefits and related penalties actually alleged or that could have been alleged in the Action by Plaintiff, on behalf of herself and the FLSA Collective Members, based on the facts alleged in the operative First Amended Complaint, (1) namely, failure to pay all minimum and overtime wages due under the Fair Labor Standards Act (29 U.S.C. §201, et seq.) and (2) attorneys' fees and costs of litigation incurred to litigate and resolve this Action. The FLSA Collective Claims do not encompass the California Class Claims, and the California Class Claims do not encompass the FLSA Collective Claims. . . .
>
> "Hybrid Settlement Members' Released Claims" means the (1) California Class Claims that the Hybrid Members are fully and irrevocably releasing in exchange for the consideration provided by this Settlement Agreement, whether arising at law, in contract or in equity, and whether for economic or non-economic damages, restitution, injunctive relief, penalties or liquidated damages from August 9, 2013, through May 30, 2019, and (2) the FLSA Collective Claims that the FLSA Settlement Collective Members are fully and irrevocably releasing in exchange for the consideration provided by this Settlement Agreement from three years before each FLSA Collective Members Opt-In Date through the date of the Preliminary Approval Order.

*Id.* ¶¶ 2.1, 2.15, 2.21.

//

1     The amended settlement agreement contains a blow provision that allows ISI to void the
2 agreement if more than 10% of the California settlement class members and hybrid settlement
3 class members opt out, or more than five FLSA settlement class members who have not
4 previously released their claims request to withdraw their consent to join during the settlement
5 notice period. *Id.* ¶ 7.3.

6     The amended settlement agreement describes a plan for distributing the Net Distribution
7 Fund to eligible members of the settlement classes as one that will allocate funds based on "a
8 proportional, workweek basis, with a multiplier of 1.75x applied to workweeks of the California
9 Settlement Class Members to account for the additional causes of action and remedies available to
10 and released by wage claimants in California, and a multiplier of 2.0x applied to workweeks of the
11 Hybrid Settlement Members who have both California claims and opted-into the FLSA collective
12 action." *Id.* ¶ 4.6. Members of the settlement classes could dispute the dates of their employment,
13 location, or total workweeks by providing notice to the settlement administrator before the date for
14 opting out or objecting to the amended settlement agreement by demonstrating through
15 employment documentation described in paragraph 6.8 of the amended settlement agreement that
16 the settlement administrator's calculations are incorrect. *Id.* ¶ 6.8.

17     Payments will be mailed to the addresses of eligible settlement class members; eligible
18 settlement class members are not required to submit a claim form. *Id.* ¶¶ 10.2, 10.3. If any checks
19 remain uncashed or amounts remain undistributed totaling less than $10,000, then the settlement
20 administrator will pay such funds to the UC Hastings College of the Law Workers' Rights Clinic.
21 ECF No. 121-2 ¶ 10.3. Counsel for Bakhtiar represents that this organization is an appropriate cy
22 pres recipient because it provides legal services for low-wage workers in California in wage-and-
23 hour cases.[2] ECF No. 144-1 ¶ 23. Any undistributed amounts in excess of $10,000 will be
24 redistributed to the settlement class members *pro rata*. ECF No. 121-2 ¶ 10.4.

---

[2] The Court finds that the cy pres recipient has the requisite nexus to the settlement classes and the objectives of the statutes that form the basis of the claims at issue in this action and is, therefore, is an appropriate cy pres beneficiary. *See Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2013) ("A cy pres award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members and must not benefit a group too remote from the plaintiff class."); *see also Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804, at *8

United States District Court
Northern District of California

Bakhtiar's counsel estimates that "Class Members' theoretical unpaid wages, including missed meal and rest breaks and liquidated damages, total $8,684,583.35 for the California Class and $4,366,459.52 for the FLSA Class, for a total of $13,051,042.87." ECF No. 121-1 ¶¶ 5-6. The total possible recovery for the settlement classes increases to $15,931,764.30 if maximum PAGA penalties, which total $2,880,721.43, are taken into account. *Id.* The Total Settlement Amount of $2,250,000, therefore, equals 14.12% of the total possible recovery. *Id.*

The settlement administrator sent on October 28, 2020, a notice specifically tailored to the members of each of the three settlement classes by first-class mail, as well as by email and text message to those for whom email and cell phone numbers were available in ISI's human resources database. *Id.* ¶¶ 6.1, 6.2, 6.9; ECF No. 144-6 ¶ 10. The settlement administrator also set up a website with links to relevant case and settlement documents, and a telephone number, email address, and post office box to receive communications from members of the settlement classes. ECF No. 144-6 ¶¶ 1-17.

### D. Jurisdiction

The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367.

## II. LEGAL STANDARD

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Rule 23 requires courts to employ a two-step process in evaluating a class action settlement. First, the parties must show "that the court will likely be able to . . . (i) approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B). In other words, a court must make a preliminary determination that the settlement "is fair, reasonable, and adequate" when considering the factors set out in Rule 23(e)(2). Fed. R. Civ. P. 23(e)(2). The court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (citation omitted); *see also* Manual

---

(C.D. Cal. Nov. 18, 2014) (approving The Legal Aid Society-Employment Law Center as a cy pres beneficiary in a wage-and-hour action because it "provides direct legal services in employment law for low-wage workers in California").

for Complex Litigation, Fourth § 21.632 (FJC 2004) (explaining that courts "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing"). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *City of Seattle*, 955 F.2d at 1276 (citation omitted). Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). If no class has yet been certified, a court must likewise make a preliminary finding that it "will likely be able to . . . (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). If the court makes these preliminary findings, it "must direct notice in a reasonable manner to all class members who would be bound by the proposal." *Id.*

Second, courts must hold a hearing pursuant to Rule 23(e)(2) to make a final determination of whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). To assess a settlement proposal, courts must balance a number of factors:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* at 1026 (citations omitted).[3] The proposed settlement must be "taken as a whole, rather than

---

[3] These factors are substantially similar to those articulated in the 2018 amendments to Rule 23(e), which were not intended "to displace any factor [developed under existing Circuit precedent], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Hefler v. Wells Fargo & Co.*, No. 16-

9

the individual component parts," in the examination for overall fairness. *Id.* Courts do not have the ability to "delete, modify, or substitute certain provisions"; the settlement "must stand or fall in its entirety." *Id.* (citation omitted).

### III. DISCUSSION

#### A. Motion for final approval of the amended settlement agreement

##### 1. Notice plan

Under Federal Rule of Civil Procedure 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must state in plain, easily-understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Here, as described above, the settlement administrator sent a notice to the members of each of the three settlement classes on October 28, 2020, that was specifically tailored to that individual's settlement class by first-class mail, as well as by email and text message to those for whom email and cell phone numbers were available in ISI's human resources database. The settlement administrator also set up a website with links to relevant case and settlement documents, and a telephone number, email address, and post office box to receive communications from members of the settlement classes. As noted, no objections have been filed.

In light of the foregoing, the Court concludes that the notice sent to the members of the settlement classes was the best one practicable under the circumstances and that it satisfies the requirements of Rule 23 and due process.

---

CV-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018) (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment).

10

### 2. Fairness, adequacy, and reasonableness of the amended settlement agreement

With the exception of the reaction of the members of the settlement classes, the Court analyzed the necessary factors and found the amended settlement agreement to be fair, adequate, and reasonable when it granted preliminary approval of the agreement. ECF No. 131 at 10-17.

Now that the members of the settlement classes have been provided with notice of the settlement and have had an opportunity to be heard, the Court finds no reason to alter this conclusion. As noted above, no member of the settlement classes has objected to the settlement and only one requested to opt out. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation omitted).

Accordingly, the Court continues to find that the amended settlement agreement is fair, reasonable, and adequate, and it, therefore, grants Bakhtiar's motion for final approval of the same.

### 3. Error by settlement administrator

In the motion for final approval, Bakhtiar represents that the settlement administrator made a "calculation error" and, as a result, it "overstated a handful of Class Members' recovery in their notices." ECF No. 143 at 4. After Rust notified the parties of this error, Bakhtiar's counsel obtained the settlement administrator's agreement that it would contribute the additional amount needed to cover the difference between what the settlement class members should have obtained pursuant to the terms of the amended settlement agreement and the incorrect amount that was stated in the notice they received. *Id.* Counsel for Bakhtiar now request that the Court permit the settlement administrator to be reimbursed for the additional amounts it paid to correct its error, which total $18,977.69, out of any amounts that remain uncollected as a result of uncashed checks, before any such remaining amounts are paid to the cy pres beneficiary.

Bakhtiar cites no authority showing that a court can modify a settlement agreement to reallocate funds that would have been paid to a cy pres beneficiary so that such funds can be used instead to reimburse the settlement administrator for extra amounts it paid to settlement class

11

1   members as a result of its own errors. Accordingly, the Court declines to modify the terms of the
2   amended settlement agreement at this juncture as Bakhtiar proposes, particularly given that notice
3   to the settlement class members has been sent and the deadline for objecting and opting out of the
4   settlement has passed. If they wish, counsel for Bakhtiar may reimburse the settlement
5   administrator for the additional costs it incurred to correct its error using funds from their fee
6   award.

### B. Motion for attorneys' fees, costs, and service award

#### 1. Attorneys' fees

"For more than two decades, the Ninth Circuit has set the 'benchmark for an attorneys' fee award in a successful class action [at] twenty-five percent of the entire common fund.'" *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 519 (N.D. Cal. 2020) (Tigar, J.) (quoting *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)). Under this approach, courts generally start with the 25% benchmark and adjust upward or downward depending on:

> [T]he extent to which class counsel "achieved exceptional results for the class," whether the case was risky for class counsel, whether counsel's performance "generated benefits beyond the cash . . . fund," the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-50 (9th Cir. 2002)). Courts often also compare the percentage-based attorneys' fee award against the lodestar, "which measures the lawyers' investment of time in the litigation," because the lodestar "provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050.

Bakhtiar requests an award of attorneys' fees of $562,500, which is 25% of the $2,250,000 Total Settlement Amount. The requested award is precisely at the 25% benchmark that the Ninth Circuit considers to be presumptively reasonable. *In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.").

United States District Court
Northern District of California

The Court finds that the requested fee award of 25% of the Total Settlement Amount is appropriate and reasonable, and that it requires no upward or downward adjustment. The substantial results that Bakhtiar's counsel achieved for the members of the settlement classes support this finding. As noted in the Court's order granting preliminary approval of the amended settlement agreement, the monetary recovery that counsel achieved for members of the settlement classes equals 14.12% of the total possible recovery, and members of the settlement classes will receive a net average of $12,625.12 per person. ECF No. 131 at 15; *see also* ECF No. 144 at 5. This recovery exceeds the recoveries achieved in several other similar actions. *See Pierce v. Rosetta Stone, Ltd.*, No. 11-cv-01283 SBA, 2013 WL 5402120, at *4 (N.D. Cal. Sept. 26, 2013) (approving settlement agreement in wage-and-hour action where the "average recovery for California Class Members is $3,890.63 for the California claims and $2,964.29 for the FLSA claim"). Counsel also obtained significant non-monetary relief, namely ISI's agreement to reevaluate the job responsibilities of persons who hold certain positions and to, among other things, provide status reports to class counsel for two years after the entry of final judgment with respect to its re-classification of these employees.

The requested award also is justified in light of the significant risks that counsel undertook in litigating this action on a contingency basis. *See* ECF No. 144-1 ¶ 11; *see also In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *21 (C.D. Cal. June 10, 2005) (approving fee award of 33.3% of the common fund as reasonable in part because of "the significant risk assumed in litigating this case on contingency fee without any guarantee of compensation"). As discussed in the Court's order granting preliminary approval of the amended settlement agreement, counsel identified several significant risks they would face if this litigation were to continue, including obstacles in obtaining and maintaining certification under Rule 23 and surviving summary judgment based on administrative exemptions that ISI has raised as defenses. The risks involved in prosecuting this litigation, in combination with the fact that counsel litigated the action on a contingency basis, supports granting a fee award of 25% of the settlement fund. *See Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804, at *10 (C.D. Cal. Nov. 18, 2014) (approving fee award of 33.3% of the settlement fund in part because of "the

1  considerable risk" that counsel undertook, "coupled with Counsel's contingency fee
2  arrangement").

3        A lodestar cross-check further supports a finding that the requested award is appropriate.
4  To calculate the lodestar, the court "multiplies a reasonable number of hours by a reasonable
5  hourly rate." *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002).
6  Here, counsel spent 869.3 hours billed at counsel's current rates, which range from $425 per hour
7  to $775 per hour for attorneys and are $200 per hour for paralegals. ECF No. 144-1 ¶¶ 1-17. The
8  number of hours spent are appropriate, and counsel's current rates[4] are reasonable in light of the
9  prevailing rates in this district. *See Smith v. Am. Greetings Corp.*, Case No. 14-cv-02577-JST,
10  2016 WL 2909429, at *9 n.7 (N.D. Cal. May 19, 2016) (Tigar, J.) (noting that, in this district,
11  "reasonable rates for partners range from $560 to $800, associates range from $285 to $510, and
12  paralegals and litigation support staff range from $150 to $240") (internal quotations and citation
13  omitted). The lodestar, therefore, is $407,825.00. ECF No. 144-1 ¶ 10. The multiplier is 1.38,
14  which "falls within the Ninth Circuit's presumptively acceptable range of 1.0-4.0." *Dyer v. Wells
15  Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) (Tigar, J.) (citing *Vizcaino*, 290 F.3d at
16  1051 n.6).

17        Accordingly, the Court grants Bakhtiar's request for an attorneys' fee award of $562,500.

18      **2.**    **Litigation costs**

19  Bakhtiar requests an award of $24,610 in costs that her counsel incurred on litigation-
20  related expenses, including filing and service costs, legal research fees, discovery and deposition
21  costs, and mediation costs. ECF No. 144-1 ¶ 6. The amended settlement agreement provides that
22  counsel may seek reimbursement of up to $25,000 in costs. The requested costs are reasonable
23  and appropriate, because they appear to have been necessary to prosecute this action and are of the
24  type customarily billed to a fee-paying client. *See Salazar v. McDonald's Corp.*, No. 3:14-cv-
25  02096-RS, 2017 WL 6883994, at *2 (N.D. Cal. Sept. 15, 2017) (awarding requested costs and

---

[4] *See Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016) ("The lodestar should be computed either using an hourly rate that reflects the prevailing rate as of the date of the fee request, to compensate class counsel for delays in payment inherent in contingency-fee cases, or using historical rates and compensating for delays with a prime-rate enhancement.").

United States District Court
Northern District of California

1    expenses to counsel because they were "necessary to the prosecution of this litigation, were the

2    sort of expenses normally billed to paying clients, and were incurred for the benefit of the class");

3    *Rutti v. Lojack Corp.*, No. SACV 06-350 DOC JCX, 2012 WL 3151077, at *12 (C.D. Cal. July 31,

4    2012) ("Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance

5    telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents

6    scanning, and visual equipment are typically recoverable."). Accordingly, the Court grants

7    Bakhtiar's motion for an award of $24,610 in costs.

### 3. Service award

"Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). "It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards." *Wren v. RGIS Inventory Specialists*, No. 06-cv-05778 JCS, 2011 WL 1230826, at *31 (N.D. Cal. Apr. 1, 2011), *supplemented*, No. 06-cv-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011). An incentive award of $5,000 is presumptively reasonable, and an award of $25,000 or even $10,000 is considered "quite high." *See Dyer*, 303 F.R.D. at 335 (citation omitted). "Nonetheless, a higher award may be appropriate where class representatives expend significant time and effort on the litigation and face the risk of retaliation or other personal risks; where the class overall has greatly benefitted from the class representatives' efforts; and where the incentive awards represent an insignificant percentage of the overall recovery." *In re Wells Fargo*, 445 F. Supp. 3d at 534 (citation omitted).

Bakhtiar requests an incentive award of $15,000. The Court finds that this award, which is higher than the presumptively reasonable award of $5,000, is justified and reasonable, because Bakhtiar has shown that her efforts and contributions to this litigation, and the risks she undertook as a result thereof, were greater than those of the average lead plaintiff. Specifically, Bakhtiar risked reputational harm in her industry as a result of being a lead plaintiff in an action against her former employer; she spent dozens of hours over the course of more than three years assisting her counsel in prosecuting this action; she was deposed over the course of twelve hours; she

United States District Court
Northern District of California

Case 4:17-cv-04559-JST    Document 148    Filed 02/10/21    Page 16 of 16

participated in two full days of mediation; and she assisted counsel in responding to 47 requests for the production of documents and 25 requests for interrogatories. ECF No. 144-1 ¶ 9. Accordingly, the Court grants Bakhtiar's request for a $15,000 incentive award.

### 4. Costs of settlement administration

Bakhtiar requests that the Court approve an award of administration costs to the settlement administrator of $15,000. Because the amended settlement agreement provides that up to $15,000 may be paid to the settlement administrator from the Total Settlement Fund, the Court approves Bakhtiar's request.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Bakhtiar's motion for final approval of the amended settlement agreement, as well as her motion for attorneys' fees, costs, and an incentive award.

**IT IS SO ORDERED.**

Dated: February 10, 2021



JON S. TIGAR
United States District Judge